# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-1107
_____

United States of America

*Plaintiff - Appellee*

v.

Michael Heath Thetford

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Pierre

_____

Submitted: October 23, 2015
Filed: November 18, 2015

_____

Before LOKEN, MURPHY, and COLLOTON, Circuit Judges.

_____

MURPHY, Circuit Judge.

Michael Heath Thetford, a resident of Alabama, impersonated an FBI agent and threatened a married couple living in South Dakota as part of a scheme to steal their property. A jury found Thetford guilty of four felonies: being a felon in possession of a firearm, impersonating a federal officer, interstate stalking, and tampering with

a witness. Thetford appeals, challenging a jury instruction by the district court[1] on the interstate element of the felon in possession charge, as well as the admission of certain evidence including his plea agreements on related charges. We affirm.

I.

When Jack and Shirley Winslett moved from Alabama to Canning, South Dakota in 2007, they left behind property in Alabama including a hangar, an airplane, a woodworking shop, a lake house, and a boat. In 2010 Thetford learned about the Winsletts' unattended property and made plans to steal from them with the help of his coworker Timothy Lewis. Thetford and Lewis had previously worked together by impersonating customs officers to extort undocumented immigrants. Thetford informed Lewis that he was going to travel to the Winsletts' home in South Dakota, pose as a federal agent, and "convince them that they didn't need to ever return to Alabama."

In May 2010 Thetford flew from Birmingham, Alabama, to Pierre, South Dakota, rented a car, and drove to the Winsletts' house in Canning. He identified himself as "Agent Russ," carried a visible handgun, and showed the Winsletts fraudulent FBI and military credentials. He told the Winsletts that their shop in Alabama was being used as a meth lab and that they were under investigation for money laundering. While speaking to them, Thetford also referenced some accurate details about the Winsletts' family affairs and medical information which shocked them. Thetford told the Winsletts he wanted them to go to Sioux City, Iowa, to take their statements and give them a polygraph test. After assuring the Winsletts that they "had to go," Thetford directed the couple into the back seat of his car. The back seat doors were locked from the outside.

---

[1]The Honorable Roberto A. Lange, United States District Judge for the District of South Dakota.

On the way to Sioux City, Thetford stopped at a gas station in Humboldt, South Dakota, went inside, and appeared to make a phone call. When he returned to the car, he told the Winsletts that they were no longer suspects because an arrest had been made in the case. He then drove them back to their home and left his pistol with Jack Winslett to work on the trigger. A few days later Thetford sent the Winsletts an email from "Russ" using a yahoo.com address attributed to "Gary Beck." In the email Thetford claimed that an arrest had been made and that he had submitted their names to the victims' compensation fund. Because they had concerns about these events, the Winsletts contacted South Dakota authorities in December 2010. The FBI later joined the investigation in 2011. Investigators traced the pistol to Thetford. They also learned that Thetford had a former coworker named Gary Russell "Russ" Beck. The real Russ Beck, however, had never used the yahoo.com email address.

In November 2011 the FBI executed a search warrant at Thetford's house in Alabaster, Alabama. Agents recovered multiple firearms and ammunition, an empty box that matched the pistol Thetford had left with the Winsletts, law enforcement uniforms, and fraudulent FBI and Marine Corps badges bearing the name "Gary Russell Beck." Agents also found one of the Winsletts' photo albums as well as their medical, financial, and business records. Thetford's computer contained files on the Winsletts, their relatives, and instructions for making fraudulent credentials. Further investigation revealed that Thetford had used the Winsletts' identities to try to sell their real property, airplanes, and boat. Thetford eluded the FBI for three days during which he made plans to travel to Florida to work on an airplane for Mark Miller. Miller drove to Alabama and met Thetford at a Waffle House. Thetford gave him a laptop computer and other belongings which Miller took to Florida. The FBI arrested Thetford in a local park where he was planning to meet a friend whom he had asked to retrieve his cherished cat Buddy from his house.

Thetford wrote a letter to his sister from prison in Alabama, asking her to contact Miller to retrieve his laptop, emphasizing that it was "very important" to get

-3-

the laptop because it contained "some very important documents."  He also told her that he was planning to flee to Mexico and not to tell anyone about his plans.  Although Thetford asked her to burn the letter, she turned it over to the FBI.  The FBI recovered Thetford's laptop, which contained files about the Winsletts, a password for the yahoo.com email account, and information related to the online sale of airplanes and boats.  In the search of Thetford's computers, federal agents found 21 images of a minor whom Thetford had sexually abused, as well as 214 other images of child pornography.

Thetford was indicted on federal charges in South Dakota and in two separate indictments in Alabama.  In one of the Alabama cases he was charged with the production and receipt of child pornography, and in the other he was charged with being a felon in possession of a firearm and conspiracy to commit wire fraud.  Thetford sent a letter to the Winsletts about his Alabama case in which he stated that "the evidence and testimony that I plan to introduce could implicate you in criminal acts."  He also said that he planned to subpoena the Winsletts themselves, but that they could "avoid this hardship" by signing an affidavit stating that he was not the person who impersonated an FBI agent at their home.  Thetford also advised the Winsletts to "exercise" their rights to remain silent.

Thetford pled guilty in both of his Alabama cases.  In his plea agreement in the firearm and wire fraud case he admitted that he had gone to the Winsletts' home in South Dakota, had used a fake FBI credential and the yahoo.com account, and had attempted to sell their boat.  In his plea agreement in the child pornography case, he admitted to having used a camera to make counterfeit credentials. The court accepted Thetford's guilty pleas after finding that he had made them freely, voluntarily,

knowingly, and understandingly, and sentenced Thetford to a total of 318 months imprisonment.[2]

After Thetford's sentencing in Alabama, a superseding indictment was filed in South Dakota charging Thetford with being a felon in possession of a firearm, impersonating a federal officer, interstate stalking, and witness tampering. 18 U.S.C. §§ 912, 922, 924, 1512, 2261A. The government moved in limine to admit the Alabama plea agreements and the plea hearing transcripts, and the district court granted the motion with the exception of any statements regarding the child pornography charges. Thetford's proposed jury instruction on the elements of the felon in possession offense was not accepted by the district court which instead used an instruction based on the Eighth Circuit model. At trial Thetford claimed that he had never misrepresented himself as an FBI agent but had traveled to South Dakota on legitimate business with the Winsletts. He also denied having a gun or driving with the Winsletts toward Iowa.

The jury found Thetford guilty of all charges, and the district court sentenced him to 70 months imprisonment consecutive to the Alabama sentences. Thetford appeals.

II.

Thetford challenges the district court jury instruction on the felon in possession of a firearm charge. We review the district court's formulation of the jury instructions for abuse of discretion and its interpretation of the law de novo. United States v. Cornelison, 717 F.3d 623, 626 (8th Cir. 2013). Section 922(g) makes it unlawful for

---

[2]On appeal, the Eleventh Circuit vacated Thetford's sentences and remanded for resentencing. United States v. Thetford, No. 13-14400, 2015 WL 4727033 at *2 (11th Cir. Aug. 11, 2015). The court did not disturb Thetford's convictions, however, because he had forfeited his only ground for appeal. Id. at *1–2.

any convicted felon "to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g)(1). A person who "knowingly violates" that provision faces up to a 10 year prison sentence. Id. § 924(a)(2). In order to convict Thetford of the offense, the district court required the jury to find (1) that Thetford had previously been convicted of a felony, (2) that he knowingly possessed the pistol, and (3) that the pistol was transported across a state line at some point during or before his possession of it. Thetford contends that the instruction should have contained an additional mens rea element requiring the government to prove that he possessed the firearm "knowing it had traveled in or affected interstate commerce."

Thetford's argument is foreclosed by our decision in United States v. Garcia-Hernandez, No. 15-1480, 2015 WL 6081044 at *2 (8th Cir. Oct. 16, 2015). There, the court addressed the same question and held that "[t]he mens rea requirement in § 924(a)(2) does not apply to the interstate-commerce element of § 922(g)(1)." Id. Thetford contends that Garcia-Hernandez does not control, citing our en banc decision in United States v. Bruguier, 735 F.3d 754 (8th Cir. 2013) (en banc). The Garcia-Hernandez court considered Bruguier, however, when it determined how the word 'knowingly' applies to the elements of § 924(a)(2). See 2015 WL 6081044 at *3. We conclude that the jury instruction given by the district court in Thetford's case was correct because, as we explained in Garcia-Hernandez, "the government had to prove [Thetford's] firearm . . . had been in or affecting interstate commerce, not that he knew it had been in or affecting interstate commerce." Id. at *2 (emphasis in original).

Thetford next contends that the district court erred in admitting the plea agreements and judgments from his Alabama cases. We review a district court's ruling on the admissibility of evidence for abuse of discretion. United States v. Ortega, 750 F.3d 1020, 1027 (8th Cir. 2014). Thetford argues that his Alabama plea

-6-

agreements were propensity evidence not admissible under Rule 404, that his statements regarding the wire fraud conviction had "nothing to do with" the South Dakota charges, that the plea agreements contained a range of "irrelevant or only tangentially relevant evidence," and that his pleas were not made knowingly and voluntarily because of what he alleges were harsh prison conditions at the time.

In this case, the plea agreements and the transcript of the hearing were relevant because they contained multiple statements in which Thetford implicated his guilt in the crimes charged in South Dakota. Those statements were admissible as opposing party statements under Rule 801(d)(2). United States v. Williams, 104 F.3d 213, 216 (8th Cir. 1997). The plea agreements were not barred by Rule 410 because they did not relate to a guilty plea that was later withdrawn. They are not barred by Rule 404(b) because they were used as proof of the South Dakota acts, to rebut Thetford's testimony, and to show his identity, rather than as propensity evidence. Although not all of the statements in the plea agreements were directly related to the events in South Dakota, they were admissible because Thetford's acts in Alabama were "inextricably intertwined" with the charged crime of interstate stalking and the jury was entitled to know the circumstances, background, and context of the crime. United States v. LaDue, 561 F.3d 855, 857–58 (8th Cir. 2009). The Alabama district court followed the procedures in Fed. R. Crim. P. 11 and determined that Thetford had entered his pleas voluntarily. We agree with the South Dakota district court that Thetford's claim that his pleas were in fact involuntary is unconvincing. Finally, the probative value of the statements in the plea agreements was high, and the district court minimized the potential for any unfair prejudice by ordering the redaction of information about child pornography. See Fed. R. Evid. 403. We conclude that the district court did not abuse its discretion in admitting the plea agreements.

Thetford also contends that the district court erred by denying his trial objections to the government's evidence, objections which he claims are "too numerous" to discuss in his brief. We consider only the four specific pieces of

evidence Thetford identified and discussed in his brief: (1) the letter he wrote to his sister from jail; (2) the testimony of Timothy Lewis, his confederate; (3) the testimony of Christopher Godber, who testified that Thetford had showed him a fake law enforcement badge; and (4) the testimony of Mike Wilson, who testified about Thetford's attempt to sell the boat. See Fed. R. App. P. 28(a)(8).

We need not decide whether the district court erred in admitting this evidence because any error was harmless. An evidentiary error is harmless "if the substantial rights of the defendant were unaffected and the error did not influence or had only a slight influence on the verdict." United States v. Peneaux, 432 F.3d 882, 894 (8th Cir. 2005). Admission of evidence may be harmless if it is corroborated by independent sources or cumulative of other evidence. United States v. Melecio-Rodriguez, 231 F.3d 1091, 1094 (8th Cir. 2000) (per curiam). In light of the overwhelming evidence presented by the government here, including the testimony of the Winsletts, the physical and forensic evidence recovered from Thetford's home, and Thetford's own admissions in his plea agreements, we conclude that any error in admitting the four pieces of cumulative evidence challenged by Thetford was harmless. See Peneaux, 432 F.3d at 894.

III.

For these reasons we affirm Thetford's South Dakota convictions.

_____

-8-