# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 17-3211

———————————————

United States of America

*Plaintiff - Appellee*

v.

Robert L. Mayfield

*Defendant - Appellant*

——————————

Appeal from United States District Court
for the District of Nebraska - Lincoln

——————————

Submitted: September 27, 2018
Filed: November 28, 2018

——————————

Before LOKEN, GRUENDER, and ERICKSON, Circuit Judges.

——————————

LOKEN, Circuit Judge.

A jury convicted Robert L. Mayfield, a California resident, of conspiracy to distribute and possess with intent to distribute methamphetamine in the District of Nebraska in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. The district

court[1] imposed the mandatory minimum sentence of 240 months' imprisonment. At trial, three cooperating witnesses testified that their methamphetamine supplier, Zachary Love, purchased meth from the "Cali Boys," brothers "Rob" Mayfield and Anthony "Duga" Harris. Mayfield appeals, arguing that out-of-court statements Love made to the cooperators, and recorded calls that Harris made from jail to "Rob" at a California telephone number, were inadmissible hearsay and violated his rights under the Confrontation Clause. He also argues the evidence was insufficient to convict and the district court erred in imposing an obstruction-of-justice sentencing enhancement. We affirm.

## I. The Out-of-Court Statements.

The trial testimony established that Zachary Love was released from jail in the spring of 2014 and soon took up with friends and fellow meth addicts, including Kenneth Johnson, Angelo Ybarra, and Marlon Rupert. The four men grew up in Lincoln, Nebraska, had known each other since school days, and each had used and sold methamphetamine for many years.

The government's first witness was Kenneth Johnson. He testified that in August of 2014, he twice drove Love to an apartment on Knox Street, where they purchased meth from a man Love identified as "Rob." Both times, Rob got in the back seat with Love, who bought two ounces of meth and later sold one ounce to Johnson. Johnson identified Rob in court as defendant Robert Mayfield. Johnson testified that Love met "Rob" at least three other times and returned from each meeting with two to four ounces of meth. Love told Johnson that his suppliers were Rob and "D," brothers from Sacramento who brought meth to Lincoln on Amtrak trains.

---

[1]The Honorable John M. Gerrard, United States District Judge for the District of Nebraska.

The government's second witness was Angelo Ybarra. He testified that Love was his meth supplier from July or August until December 2014. Ybarra went with Love to a Knox Street apartment twice that fall. Both times, Ybarra gave Love money; Love entered the apartment alone and returned with two ounces of meth. A week after the second purchase, Ybarra and Love went to a different apartment, where Ybarra saw Love purchase meth from a dealer in the doorway fifteen yards away. Several weeks later, Ybarra and Love picked up the same dealer and they drove to a nearby home. Love and the dealer entered the home, and Love returned with a quarter-pound of meth. Ybarra testified that Love identified the dealer as "Rob," and said Rob brought the meth from California by train. Ybarra also witnessed another user, Tim, purchase an ounce of meth from the same dealer. Ybarra identified the dealer in court as defendant Robert Mayfield.

The third witness was Marlon Rupert. He testified that Love supplied him meth in the summer of 2014. On two occasions, Rupert saw Love with a quarter-pound of meth. Love said his meth sources were the "Cali boys," brothers Rob and "Duga" and their cousin Joe. Rupert never accompanied Love to purchase meth, and never spoke with any of the "Cali boys" while in Lincoln. However, months later, while incarcerated at CCA Leavenworth, Rupert became close with another inmate, Robert Mayfield. Upon learning that Mayfield came from California and was awaiting trial on methamphetamine distribution charges in Lincoln, Nebraska, Rupert "put two and two" together and asked Mayfield if he was one of the "Cali boys" who supplied Love. Rupert testified that, although hesitant, Mayfield admitted to having a relationship with Love. Mayfield also told Rupert that he and "Duga," Anthony Harris, were brothers.

Government law enforcement witnesses testified that, in February 2015, Harris was arrested and a warrant search of his apartment on Knox Street uncovered methamphetamine, distribution paraphernalia, and firearms. At the close of the government's case, after the district court overruled Mayfield's objections, the

government played tapes of a series of phone calls Harris placed from jail to a Sacramento telephone number after his arrest. In these calls, Harris spoke to man he identified as "Rob." Harris told Rob that the police had found "like a teener," or 1/16 of an ounce, at Harris's apartment. During a later call, Harris told Rob the police had in fact found "everything," including "the banger." Rob counseled Harris not to speak to anyone or worry about the charges, and promised to collect a debt in order to raise funds for a lawyer.

Before the start of trial, Mayfield objected that Harris's statements during these recorded calls should be excluded as inadmissible hearsay and a violation of his Confrontation Clause rights. During trial, defense counsel made timely continuing objections that Love's out-of-court statements as related by the three cooperating witnesses were inadmissible hearsay. The government contended that all these statements were admissible under the hearsay exception in Rule 801(d)(2)(E) of the Federal Rules of Evidence because they were made during and in furtherance of the charged conspiracy.

**A. Hearsay Issues.** Codifying a hearsay exception that the Supreme Court described as "steeped in our jurisprudence" in Bourjaily v. United States, 483 U.S. 171, 183 (1987), Rule 801(d)(2)(E) provides that a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Before admitting a coconspirator's statement under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence, and the district court must find, "that there was a conspiracy involving the declarant and the nonoffering party, and the statement was made during the course and in furtherance of the conspiracy." Id. at 175 (quotation omitted).

In United States v. Bell, 573 F.2d 1040 (8th Cir. 1978), we established a procedure to address these issues during a criminal trial, which the district court properly followed in this case. After Mayfield timely objected to Love's out-of-court

statements, the district court provisionally admitted the statements and advised the parties, on the record at a side-bar conference, that the statements were admitted subject to defendant's objection, that the government was required to prove by a preponderance of the evidence that the statements were made during the course and in furtherance of the conspiracy, that the court will make an explicit determination as to admissibility at the conclusion of the evidence, and that, if the statements are not admitted, the court will declare a mistrial unless a cautionary instruction would suffice. See Id. at 1044. The court adopted the same procedure regarding Harris's statements in the recorded phone calls before the start of trial.

The district court made its final determination as to admissibility near the end of the government's case but before the recorded calls were played for the jury. The court found that all out-of-court statements by Love and Harris were admissible under the hearsay exception in Rule 801(d)(2)(E) because the government established, by a preponderance of the evidence, that "A, a conspiracy existed; B, that the defendant and the declarant were members of the conspiracy; and, C, that the declaration[s were] made during the course and in furtherance of the conspiracy." Consistent with controlling precedents, the court ruled that it "may take into consideration the contents of the statements, although the government must prov[id]e independent evidence outside the statements themselves to establish the existence of the conspiracy." See Bourjaily, 483 U.S. at 176-181; United States v. Ragland, 555 F.3d 706, 713 (8th Cir. 2009); United States v. Roach, 164 F.3d 403, 409 (8th Cir. 1998), cert. denied, 528 U.S. 845 (1999).

In addition to the statements themselves, the court found that independent evidence, "particularly the testimony of Kenneth Lee Johnson," established that Love, Harris, Mayfield, and the three cooperating witnesses were part of a conspiracy still in existence when Harris was arrested and physical evidence was seized at his apartment, and that the challenged statements were made in furtherance of the conspiracy because they "either involved the planning or organizing of the conspiracy,

the direction of the conspiracy's continued operations or efforts to protect and conceal the existence of the conspiracy."

On appeal, Mayfield argues the district court erred in finding that Love and Harris were Mayfield's co-conspirators, and that their out-of-court statements were made in the course of and in furtherance of the conspiracy. Initially, we note but do not resolve a standard-of-review issue. Many prior cases have said, without analysis, that we review the admission of out-of-court statements under Rule 801(d)(2)(E) "for abuse of discretion." See, e.g., Ragland, 555 F.3d at 713. At first blush, this is a logical application of the general rule that "[w]e review the evidentiary rulings of a district court for abuse of discretion." United States v. Jordan, 260 F.3d 930, 932 (8th Cir. 2001). But admissibility under Rule 801(d)(2)(E) *must* be based on district court *findings*. Not surprisingly, therefore, the Supreme Court concluded its analysis in Bourjaily, "We have no reason to believe that the District Court's factfinding on this point [whether declarant was involved in a conspiracy with defendant] *was clearly erroneous*." 483 U.S. at 181 (emphasis added). Surely, the proper standard is to review the district court's Rule 801(d)(2)(E) factfinding for clear error, and then review the ultimate decision to admit or exclude the statement for abuse of discretion (for example, the court has discretion to exclude a statement that is not hearsay under Rule 801(d)(2)(E) because it is cumulative or unfairly prejudicial, and discretion to admit a statement that is hearsay under Rule 801(d)(2)(E) for other reasons). The standard of review is important but does not affect our decision in this case.

Regarding the out-of-court statements of meth supplier Love, Mayfield argues there was no independent evidence Mayfield and Love entered into a conspiracy. We disagree. Both Johnson and Ybarra testified that Mayfield sold methamphetamine to Love *in their presence*. This and the circumstantial independent evidence that Mayfield and Harris were the "Cali boys" was more than sufficient to establish the existence of a conspiracy involving Love, Mayfield, Harris, and the cooperating witnesses by a preponderance of the evidence. Mayfield further argues that Love's

statements were not in furtherance of the conspiracy but rather were the type of "merely informative statements and statements made simply to impress the listener" which are "not generally in furtherance of the conspiracy." Ragland, 555 F.3d at 713 (quotation omitted). However, Love's statements were far more than boasting. They were "statements that discuss[ed] the supply source for the illegal drugs or identif[ied] a coconspirator's role in the conspiracy," which "are considered statements made in furtherance of the conspiracy." Id. (quotation omitted).

Regarding Harris's statements on the recorded jail calls, Mayfield first argues the government failed to prove he was the recipient of the calls from Harris. This argument was not properly preserved -- in raising the issue of the recorded calls before trial, defense counsel said, "obviously, Mr. Mayfield's statements are getting in, but Mr. Harris's responses, they're hearsay." But in any event, the contention is without merit. There was independent evidence Harris and Mayfield were participants in the conspiracy. Therefore, if Harris's comments were made in furtherance of the conspiracy, their *admissibility* did not depend on whether the co-conspirator who received the calls was Mayfield. Of course, in defending the charge, Mayfield could -- and did -- argue the government failed to prove he was the "Rob" to whom Harris was speaking.

Mayfield further argues that Harris's statements were not made in furtherance of the conspiracy. The district court acknowledged in its preliminary ruling that "it is possible to interpret the conversations between Harris and his family as simply providing reassurance and assistance to a family member who had gotten in legal trouble." But after hearing the government's entire case, the court found that the calls including Harris's statements concerned "efforts to protect and conceal the existence of the conspiracy." Reviewing the phone call conversations together with the government's independent evidence, particularly the circumstances surrounding Harris's arrest, we conclude the district court's finding is well-supported. "Efforts to conceal a conspiracy actually further that conspiracy, as do statements of reassurance

which serve to maintain trust and cohesiveness, or inform each other of the current status of the conspiracy." United States v. Tremusini, 688 F.3d 547, 555 (8th Cir. 2012) (cleaned up).

For these reasons, we affirm the district court's ruling that the out-of-court statements by Love and Harris were admissible under Rule 801(d)(2)(E).

**B. Confrontation Clause Issues.** Harris argues that the statements by Love and Harris were admitted in violation of the Confrontation Clause because neither testified at trial, depriving Mayfield of his right to cross-examine adverse witnesses. We review an alleged violation of the Confrontation Clause *de novo*. United States v. Dale, 614 F.3d 942, 955 (8th Cir. 2010), cert. denied, 563 U.S. 918 (2011). Mayfield raised a Confrontation Clause objection to Harris's statements in the recorded jail calls before trial. We doubt he preserved this issue in challenging Love's out-of-court statements during trial, but we need not decide whether only plain error review is appropriate because the contention is without merit. See United States v. Johnson, 688 F.3d 494, 504 (8th Cir. 2012) (standard of review).

The Confrontation Clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had had a prior opportunity for cross-examination." Davis v. Washington, 547 U.S. 813, 821 (2006), quoting Crawford v. Washington, 541 U.S. 36, 53-54 (2004). Neither the Supreme Court nor this court has comprehensively defined the universe of "testimonial" statements. See United States v. Wright, 536 F.3d 819, 823 (8th Cir. 2008), cert. denied, 556 U.S. 1144 (2009). However, prior decisions interpreting Crawford and Davis make clear that the out-of-court statements here at issue were not testimonial.

First, Mayfield argues that Harris's statements made during the jailhouse telephone calls were testimonial because they were recorded while Harris was

detained. However, in United States v. LeBeau, we held that recorded jail calls are not testimonial if "the primary purpose of the calls was to further the drug conspiracy, not to create a record for a criminal prosecution." 867 F.3d 960, 981 (8th Cir. 2017), and cases cited. Second, Mayfield argues that Love's statements "concerning whether Mayfield was involved in a drug conspiracy are testimonial." However, "co-conspirators' statements made in furtherance of a conspiracy and admitted under Rule 801(d)(2)(E) are generally non-testimonial and, therefore, do not violate the Confrontation Clause as interpreted [in Crawford]." United States v. Singh, 494 F.3d 653, 658 (8th Cir. 2007); see United States v. Vargas, 570 F.3d 1004, 1009 (8th Cir. 2009). Mayfield cites no contrary authority.

## II. Sufficiency of the Evidence.

Mayfield next argues that, even if the out-of-court statements were properly admitted, the evidence was insufficient to convict him of participation in the charged methamphetamine distribution conspiracy, which required proof of (1) the existence of an agreement among two or more people to distribute methamphetamine, (2) the defendant's knowledge of the agreement, and (3) that the defendant knowingly joined and participated in the agreement. United States v. Whirlwind Soldier, 499 F.3d 862, 869 (8th Cir. 2007), cert. denied, 552 U.S. 1209 (2008). We review the sufficiency of the evidence to sustain a conviction *de novo*, viewing the evidence in the light most favorable to the government, accepting all reasonable inferences that support the government, and resolving conflicts in the government's favor. United States v. Morrissey, 895 F.3d 541, 549 (8th Cir. 2018). We will reverse "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." Id. (citation omitted).

At trial, the government relied on the testimony of the cooperating witnesses; Harris's recorded calls; the testimony of police officers describing Harris's arrest, the evidence seized at his apartment, and the Lincoln drug market; information extracted

from Harris's cell phone; and Amtrak records detailing travel under the name "Robert Mayfield" from California to Lincoln during 2014 and 2015. On appeal, Mayfield emphasizes that Love and Harris did not testify, repeatedly challenges the credibility of the cooperating witnesses, and argues that the lack of "direct" evidence he distributed methamphetamine means the government failed to prove his guilt beyond a reasonable doubt. Without question, guilt beyond a reasonable doubt was the governing standard the jury applied in finding Mayfield guilty. It is the jury that hears and must weigh the evidence, including the credibility of witnesses who are cooperating with the government. We again emphasize that the "jury's credibility determinations are well-nigh unreviewable because the jury is in the best position to assess the credibility of witnesses and resolve inconsistent testimony." United States v. Hodge, 594 F.3d 614, 618 (8th Cir.), cert. denied, 560 U.S. 958 (2010). We have "repeatedly upheld jury verdicts based solely on the testimony of conspirators and cooperating witnesses." United States v. Delacruz, 865 F.3d 1000, 1006 (8th Cir. 2017) (quotation omitted). Here, that testimony was corroborated by circumstantial evidence linking Mayfield to a well-established conspiracy to distribute methamphetamine. The evidence was more than sufficient.

### III. A Sentencing Issue.

Mayfield was subject to a mandatory minimum 240-month sentence because he had a prior felony drug conviction. See 21 U.S.C. §§ 841(b)(1)(A), 851(a)(1). At sentencing, the government introduced a report by a Saline County Corrections Officer that Mayfield, while incarcerated after trial but prior to sentencing, made a throat-slashing gesture to Marlon Rupert while passing him in the jail hallway. Mayfield testified that he did not threaten Rupert, that Rupert repeatedly taunted Mayfield at the jail, and that the officer lied in his report. The district court credited the officer's report, found Mayfield's testimony not credible, and imposed a two-level enhancement for obstruction of justice. See U.S.S.G. § 3C1.1. The court stated that, because it was imposing a mandatory minimum sentence, "I will be imposing the

same sentence regardless of my rulings on either of these enhancements" (the other enhancement urged by the government was not imposed).

On appeal, Mayfield argues the district court clearly erred in imposing the obstruction of justice enhancement. See United States v. Mohamed, 757 F.3d 757, 761 (8th Cir. 2014) (standard of review). However, as the district court expressly stated that it would have imposed the same sentence regardless, any error in imposing the enhancement was harmless. See United States v. McGee, 890 F.3d 730, 737 (8th Cir. 2018). Mayfield argues the error was not harmless because Congress may amend the 240-month mandatory minimum sentence, in which case the obstruction enhancement may prejudice Mayfield's resentencing. That hypothesis is far too speculative to warrant disregarding the district court's clear statement that it intended to impose the same sentence without regard to the enhancement.

The judgment of the district court is affirmed.

_____