# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1702
_____

United States of America

*Plaintiff - Appellee*

v.

Jose Carlos Ramirez-Martinez

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Northern District of Iowa - Western
_____

Submitted: April 8, 2021
Filed: July 29, 2021
_____

Before SHEPHERD, ERICKSON, and KOBES, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

A jury convicted Jose Carlos Ramirez-Martinez (Appellant) of one count of conspiracy to distribute methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Appellant argues that that the district court[1] committed

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

evidentiary errors by admitting text messages and transcripts of phone calls between Appellant and his co-conspirators and that there was insufficient evidence to support his conviction. Having jurisdiction pursuant to 28 U.S.C. § 1291 and finding no error, we affirm.

I.

The Iowa Division of Narcotics Enforcement (the Division), alongside various law enforcement agencies from Iowa, Minnesota, and South Dakota, launched an investigation into a methamphetamine trafficking operation based in Worthington, Minnesota. Appellant was not the Division's initial target, but through its investigation (consisting of a pen register, wiretap, and 20 controlled transactions) of the initial target, Rogelio Magana Garcia-Jimenez (Magana),[2] it became apparent that Magana was frequently communicating with an individual known as "Charlie." In the spring of 2016, at the request of Special Agent Chris Nissen (the agent responsible for the Division's task force), Iowa State Trooper Ryan Dudney conducted a traffic stop of "Charlie" while "Charlie" was traveling on the interstate near Denison, Iowa. Special Agent Nissen and his team surveilled Trooper Dudney's stop of "Charlie," and during that stop, "Charlie" identified himself as Appellant, Jose Carlos Ramirez-Martinez. Special Agent Nissen directed Trooper Dudney to take a photograph of Appellant's identification, which Trooper Dudney did.

In July 2016, using the wiretap of Magana's phone, Special Agent Nissen's team intercepted text messages between Magana and a number ending in 6140 (the 6140 number). Also in July Magana and the 6140 number exchanged several phone calls. From these calls, Special Agent Nissen and his team learned that on August

---

[2]In this opinion, we refer to some individuals, like Magana, by names other than their first or last. This usage does not reflect a familiarity with those individuals but rather is reflective of the nomenclature employed by investigators throughout their investigation of this methamphetamine conspiracy and/or the parties in their briefings to this Court.

4, 2016, the user of the 6140 number would send a shipment of methamphetamine from somewhere in Iowa by a delivery driver to Magana, who was located in Worthington, Minnesota. Special Agent Nissen (stationed in Iowa) coordinated with agents in Minnesota to set up surveillance of Magana's house and a restaurant and grocery store called El Mexicano. After Special Agent Nissen intercepted a call between Magana and the delivery driver, the surveillance team in Minnesota observed Saul Piceno-Valtierra, a close friend of Magana's, leave Magana's house and travel to a nearby gas station. There, Piceno-Valtierra made contact with the delivery driver; the delivery driver followed Piceno-Valtierra to Magana's residence, at which point the delivery driver briefly pulled into Magana's garage before making the return trip to Iowa.

On August 22, 2016, Special Agent Nissen organized a surveillance operation to identify the user of the 6140 number. Special Agent Nissen and his team believed that Appellant was the user of the 6140 number and distributed Appellant's photograph (obtained from Trooper Dudney's traffic stop of Appellant) to surveillance officers stationed at a Denison, Iowa Walmart. Special Agent Nissen, from Iowa, placed a "ruse" call to the 6140 number while radioing to the surveillance officers, letting those officers know that he had placed the call. The surveillance officers confirmed that Appellant answered his cell phone at the same time Special Agent Nissen placed his call to the 6140 number. Special Agent Nissen then used this information in an application to the district court for a Title III wiretap of the 6140 number, which the district court granted on August 30, 2016.

Calls intercepted to and from the 6140 number revealed that, on September 1, 2016, an individual would be traveling from outside of Iowa to pick up money from Appellant in Denison, Iowa. In response, Special Agent Nissen organized another surveillance operation, stationing officers so that they could surveil Appellant and the trailer house where the delivery would take place. He contacted Iowa State Patrolman Brian Beckman, asking Patrolman Beckman to conduct a traffic stop of the delivery vehicle. Patrolman Beckman conducted the stop, and the driver of the vehicle was identified as Maria Angelina Alvarez Murillo (Maria Alvarez) by her

California driver's license, which Patrolman Beckman photographed. Also on September 1, 2016, Special Agent Nissen placed a "ruse" call to the number that had contacted the 6140 number about that day's delivery. Using this "ruse" call and a surveillance team similar to that which Special Agent Nissen employed against Appellant on August 22, the officers confirmed that the number communicating with the 6140 number belonged to Maria Alvarez.

On September 19, 2016, Special Agent Nissen and his team executed a search warrant at Magana's residence in Worthington, Minnesota, recovering 5.13 pounds of methamphetamine. The team arrested Magana, along with several other individuals associated with Magana. On April 18, 2017, Appellant was indicted for one count of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. Four of those arrested at Magana's residence—Magana, Piceno-Valtierra, Rafeal Martinez, and Treshina Salazar—testified against Appellant at trial. Seven law enforcement officers also testified.

The first co-conspirator to testify was Martinez: he explained that Appellant was a source of methamphetamine for him; that over an eight-month period, he purchased approximately 12 pounds of methamphetamine from Appellant; and that at some point during this eight-month period, he fell behind in his payments to Appellant. To alleviate this debt and to purchase a quarter pound of methamphetamine, Martinez gave Appellant a Volkswagen Jetta. He testified that he knew Appellant as "El Primo." Martinez also testified that Appellant introduced him to Treshina Salazar: Martinez worked as a middleman for Appellant, with Martinez delivering methamphetamine from Appellant to Salazar on multiple occasions. Salazar then testified, explaining that she knew Appellant as both "Carlos Ramirez" and "Charlie," that she began buying methamphetamine from Appellant in 2012, and that she bought methamphetamine from him until the time of her arrest in 2016. Salazar corroborated much of Martinez's testimony, explaining that she lived with Martinez and saw him in possession of methamphetamine sourced from

-4-

Appellant. Salazar also testified that Appellant gave her a Volkswagen Jetta, which Martinez had given to Appellant to extinguish a debt. Salazar explained that, on two occasions, she delivered methamphetamine from Denison, Iowa, to Worthington, Minnesota, at Appellant's direction, exchanging methamphetamine for money which she would then transport back to Appellant in Denison, Iowa. During one of these deliveries, Salazar testified that she delivered methamphetamine to Juan Lopez-Zuniga, one of Magana's most frequently interacted-with contacts, at the El Mexicano restaurant and grocery store before completing the delivery in the Thompson Apartments, located above El Mexicano. In exchange for these two deliveries, Appellant reduced a methamphetamine debt Salazar owed to him by $500 and gave her a half ounce of methamphetamine. Salazar testified that Appellant asked her to complete a third delivery, but because she had been arrested, she did not make the delivery. Finally, Salazar testified that Appellant's source of methamphetamine was a woman known as "Duena" from California, who Salazar identified as Maria Alvarez.

Magana then testified, explaining that Lopez-Zuniga worked for him: Lopez-Zuniga would travel to Denison, Iowa, pick up methamphetamine from Appellant, then sell that methamphetamine at the Thompson Apartments located above El Mexicano. Magana identified Appellant as "El Primo," and he identified the 6140 number as belonging to "El Primo," explaining that he contacted the 6140 number to reach Appellant. He also testified to the contents of government exhibits 101-138.[3] These exhibits consist of text messages and transcripts of phone calls between Magana and Appellant and between Magana and another co-conspirator. Magana confirmed that, in these conversations, he requested a half pound of methamphetamine from Appellant (so that he could meet the demand of his customers); indicated that he would send someone to pick up the methamphetamine from Appellant; and promised Appellant that, although he had fallen behind in payments to Appellant for this methamphetamine, he would soon pay Appellant with

_____

[3]The government did not seek admission of exhibit 127, as it was duplicative, and therefore any citation to "exhibits 101-138" does not include exhibit 127.

-5-

money he was collecting from customers. At this time, Appellant objected to these exhibits' admission as being inadmissible hearsay. The government responded, arguing that the exhibits were admissible nonhearsay under Federal Rules of Evidence 801(d)(2)(A) and (E). The district court explained that it would conditionally admit the exhibits, considering all of the government's evidence before officially ruling.

The last co-conspirator to testify was Piceno-Valtierra. He explained that he worked for Magana, delivering drugs to customers on behalf of Magana. He testified that he once traveled from Worthington, Minnesota, to Denison, Iowa, to meet Appellant and pick up methamphetamine for Magana. Piceno-Valtierra also confirmed that he met the August 4 delivery driver to receive methamphetamine on behalf of Magana. He further testified that the methamphetamine originated in Denison, Iowa. Martinez, Salazar, Magana, and Piceno-Valtierra all met face-to-face with Appellant at least once, and all four co-conspirators subsequently identified Appellant in court based on this face-to-face experience.

Finally, the government recalled Special Agent Nissen, who testified as to the contents of government exhibits 201-222. These exhibits featured text messages and transcripts of phone calls between Maria Alvarez and Appellant. In these communications, the pair discussed Maria Alvarez's September 1, 2016 delivery of methamphetamine to the trailer house and Appellant's payment of between $12,000 and $13,000 to Maria Alvarez for the methamphetamine. Appellant objected to exhibits 201-222 as inadmissible hearsay, and in response, the government cited Rules 801(d)(2)(A) and (E), arguing that they were admissible nonhearsay. The district court again explained that it would conditionally admit the exhibits but would consider all of the government's evidence before officially ruling. At the close of the government's case, Appellant made an oral motion for judgment of acquittal, and the district court reserved ruling on the motion. The district court then addressed Appellant's earlier objections to the admission of exhibits 101-138 and 201-222, finding those exhibits admissible and explaining to the jury that it would "fully receive" those exhibits into evidence. The jury found Appellant guilty of one count

of conspiracy to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine which contained 50 grams or more of actual methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846, and the district court sentenced Appellant to 180 months imprisonment with 5 years supervised release. Appellant filed a renewed motion for judgment of acquittal or alternatively, a new trial. R. Doc. 56. The district court denied that motion, R. Doc. 65, and Appellant now appeals.

## II.

Appellant contends that the district court erred in admitting exhibits 101-138 and exhibits 201-230. Prior to trial, Appellant filed a motion in limine, seeking exclusion of, in part: calls or texts purporting to be Appellant; calls or texts from other persons purporting to be communicating with Appellant; and calls or texts between third parties. See R. Doc. 34, at 1. The district court conditionally admitted the evidence before ultimately determining that Appellant's co-conspirator statements would be allowed pursuant to the procedures outlined in United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978).[4]

Appellant first challenges the admission of exhibits 101-138, which consisted of text messages between Magana and the 6140 number, arguing that the government failed to sufficiently identify Appellant as the number's user. Therefore, he argues, those messages were not admissible as a statement by a party opponent under Federal Rule of Evidence 801(d)(2)(A). We apply an abuse of

---

[4]"In [Bell], this [C]ourt held that a district court may conditionally allow testimony as to the statement of an alleged coconspirator subject to later proof, by a preponderance of independent evidence, that the declarant was a coconspirator and that the statement was during the course of and in furtherance of the conspiracy. [573 F.2d at 1044.] If, at the close of the evidence, the government has failed to carry its burden of the proof, then [the] district court will determine whether a cautionary instruction will correct the problem or whether a mistrial must be declared. Id." United States v. Cazares, 521 F.3d 991, 994 n.2 (8th Cir. 2008).

discretion standard of review when reviewing the district court's admission of exhibits 101-138.  See United States v. Midkiff, 614 F.3d 431, 441 (8th Cir. 2010).

Rule 801(d)(2)(A) provides that a statement is not hearsay where the statement "is offered against an opposing party" and where that statement "was made by the party in an individual or representative capacity."  Fed. R. Evid. 801(d)(2)(A). Although Appellant cloaks this challenge in the veil of Rule 801(d)(2)(A), his challenge is actually one of authenticity: he argues that the government did not sufficiently identify him as the 6140 number's user, which we construe as a challenge to the text messages' authenticity.  See, e.g., Clark v. United States, 211 F.2d 100, 105 (8th Cir. 1954) ("The question was not as to the admissibility of [the exhibits'] contents as official statements or records, as appellant argues, but simply as to the sufficiency of their identification or authenticity as being statements of appellant."); see also United States v. Kandiel, 865 F.2d 967, 974 (8th Cir. 1989) (appellant arguing, in part, that the government failed to properly authenticate tapes featuring statements made by appellant because the government did not properly identify appellant as the speaker).  "[Rule 901(a)] provides that, to authenticate an item of evidence, 'the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is.'"  United States v. Young, 753 F.3d 757, 773 (8th Cir. 2014).  As such, "[t]he party authenticating the exhibit 'need only prove a rational basis for that party's claim that the document is what it is asserted to be.'  'This may be done with circumstantial evidence.'"  United States v. Needham, 852 F.3d 830, 836 (8th Cir. 2017) (citation omitted).

Special Agent Nissen, as well as an officer on the surveillance team, testified to the August 22 "ruse" call placed to the 6140 number.  Both testified that Appellant answered this "ruse" call.  Magana also testified, explaining that Appellant was his source for methamphetamine and that, when he contacted Appellant about methamphetamine, he contacted the 6140 number.  Magana explained that Appellant used the pseudonym "El Primo," and in several of Magana's text messages to the 6140 number, he referred to the 6140 number's user as "El Primo."  Martinez also testified that his source was an individual known as "Primo," and Martinez identified

Appellant as "Primo" in open court. This evidence certainly meets the undemanding "rational basis" standard, see id. (citation omitted), and sufficiently identifies Appellant as the user of the 6140 number. Because we find that the government properly authenticated the text messages, providing sufficient evidence to support a finding that the messages sent and received from the 6140 number were sent and received by Appellant, we find that the district court did not abuse its discretion in admitting exhibits 101-138 pursuant to Rule 801(d)(2)(A).

Appellant next challenges the admission of exhibits 201-230, which consisted of text messages exchanged between Appellant and his co-conspirators. He argues that the text messages were the only evidence of any conspiracy, and therefore, without additional independent evidence establishing a conspiracy, those messages should not have been admitted as out-of-court statements by co-conspirators pursuant to Rule 801(d)(2)(E). Although we generally apply an abuse of discretion standard to the district court's admission of evidence, see Midkiff, 614 F.3d at 441, "admissibility under Rule 801(d)(2)(E) *must* be based on district court findings," United States v. Mayfield, 909 F.3d 956, 961 (8th Cir. 2018) (second emphasis omitted). "Surely, [then,] the proper standard is to review the district court's Rule 801(d)(2)(E) factfinding for clear error, and then review the ultimate decision to admit or exclude the statement for abuse of discretion . . . ." Id. In Mayfield, the Court was equivocal about the standard of review, noting, as is the case here, "[t]he standard of review is important but does not affect our decision in this case." Id. We therefore need not decide whether we apply a clear error or an abuse of discretion standard to Appellant's challenge to evidence admitted pursuant to Rule 801(d)(2)(E) because Appellant's argument fails under either standard.

> [Federal Rule of Evidence] 801(d)(2)(E) provides that a statement offered against an opposing party that "was made by the party's coconspirator during and in furtherance of the conspiracy" is not hearsay. Before admitting a coconspirator's statement under Rule 801(d)(2)(E), the government must establish by a preponderance of the evidence, and the district court must find, "that there was a conspiracy

involving the declarant and the nonoffering party, and the statement was made during the course and in furtherance of the conspiracy."

Mayfield, 909 F.3d at 960 (citations omitted). "[A]lthough courts may consider the contents of the statements, the government must produce independent evidence outside of the statements themselves to establish the existence of the conspiracy." Young, 753 F.3d at 771. Notably, this "independent evidence" can be "completely circumstantial." Id.

Appellant timely objected to the admission of these exhibits, and the district court admitted them provisionally pursuant to the procedure detailed in Bell. Later, after finding that the government had established, by a preponderance of the evidence, that "there was a conspiracy involving the declarant and the nonoffering party, and the statement was made during the course and in furtherance of the conspiracy," Mayfield, 909 F.3d at 960 (citation omitted), the district court made an express determination that the exhibits were admissible under Rule 801(d)(2)(E). We find no error in the district court's determination. The government presented substantial evidence that Appellant participated in a conspiracy to distribute methamphetamine. This evidence included testimony from seven law enforcement officers and four co-conspirators with each identifying Appellant as a source of methamphetamine who also facilitated the sale and transport of large amounts of methamphetamine and money, in Iowa and outside of Iowa. Further, the government's evidence showed that Appellant acted as a supply source for many years. We find that the government presented sufficient "independent evidence" to establish, by a preponderance of the evidence, that a conspiracy existed. See Young, 753 F.3d at 771; see also Mayfield, 909 F.3d at 961. Therefore, exhibits 201-230 were admissible under Rule 801(d)(2)(E).

Even if there had been any error in admitting these exhibits, we have held that the "[a]dmission of evidence may be harmless if it is corroborated by independent sources or cumulative of other evidence." United States v. Thetford, 806 F.3d 442, 447 (8th Cir. 2015); see also United States v. Oliver, 987 F.3d 794, 799 (8th Cir.

2021) ("An evidentiary error is harmless when, after reviewing the entire record, we determine that the substantial rights of the defendant were unaffected, and that the error did not influence or had only a slight influence on the verdict." (citation omitted)). Given the overwhelming evidence against Appellant, discussed infra Section III, much of which corroborated the communications admitted in the challenged exhibits, any error in admitting exhibits 101-138 and exhibits 201-230 was harmless. See Thetford, 806 F.3d at 447.

III.

Appellant also contends that there is insufficient evidence to support his conviction and as such, the district court erred in denying his motion for a new trial or, alternatively, acquittal. "We therefore 'review the sufficiency of the evidence to sustain [this] conviction de novo, viewing the evidence in the light most favorable to the jury's verdict and reversing only [where] no reasonable jury could have found the defendant guilty beyond a reasonable doubt.'" United States v. Campbell, 986 F.3d 782, 804 (8th Cir. 2021) (alterations in original) (citation omitted); see also United States v. Thompson, 533 F.3d 964, 970 (8th Cir. 2008) ("[We] resolv[e] all evidentiary conflicts in favor of the government, and accept[] all reasonable inferences supported by the evidence." (citation omitted)).

To prove Appellant conspired to distribute methamphetamine, the government needed to show, beyond a reasonable doubt, that "there was an agreement to distribute drugs, that [Appellant] knew of the conspiracy, and that [Appellant] intentionally joined the conspiracy." Campbell, 986 F.3d at 804 (citation omitted). This does not require that the government show a formal agreement between Appellant and his co-conspirators; rather, "showing a tacit agreement by understanding proven wholly by circumstantial evidence or by inferences from the parties' actions is sufficient." Id. (citation omitted). "Because conspiracies are often secretive, their existence may be proven through circumstantial evidence alone, and evidence of an agreement to join the conspiracy

-11-

may be inferred from the facts." United States v. Shavers, 955 F.3d 685, 691 (8th Cir. 2020) (citation omitted).

We first reject Appellant's argument insofar as he asks us to reevaluate the credibility of government witnesses. Appellant contends that the government's four cooperating witnesses were not credible and that their testimony therefore cannot support his conviction. See Appellant Br. 17. However, all credibility determinations are within the jury's province—not the province of this Court—and are "entitled to special deference." See United States v. Moua, 895 F.3d 556, 559 (8th Cir. 2018) (per curiam) (citation omitted); see also United States v. Cooper, 990 F.3d 576, 583 (8th Cir. 2021) ("[I]n reviewing the sufficiency of the evidence, '[i]t is axiomatic that we do not pass upon the credibility of witnesses or the weight to be given their testimony.'" (alterations in original) (citation omitted)). "A jury is free to believe or reject a witness's testimony in part or in whole." United States v. Hewitt, 999 F.3d 1141, 1146 (8th Cir. 2021) (per curiam) (citation omitted). Furthermore, "[o]n numerous occasions we have upheld jury verdicts based solely on the testimony of cooperating witnesses." United States v. Bradley, 643 F.3d 1121, 1125 (8th Cir. 2011) (citation omitted). Therefore, we leave undisturbed the jury's credibility determinations.

We next reject Appellant's argument that there is insufficient evidence to support his conviction, as the government presented an overwhelming case against Appellant, which consisted of pen register and wiretap evidence, multiple surveillance operations, traffic stops, and testimony from four of Appellant's co-conspirators and seven law enforcement officers. The co-conspirator testimony demonstrated that Appellant was not only a supply source of methamphetamine but also that he was responsible for organizing and facilitating much of the operation's deliveries and sales. This operation was not limited to the Denison, Iowa area but rather stretched across state lines, with several co-conspirators regularly traveling between Denison, Iowa, and Worthington, Minnesota, at Appellant's direction. The government also presented testimony that Appellant regularly collected large debts from his customers, with Martinez giving Appellant a Volkswagen Jetta and Salazar

delivering methamphetamine from Denison, Iowa, to Worthington, Minnesota, each to repay their debts which they had incurred from their personal use of methamphetamine and their roles as dealers. Based on this record, a reasonable jury could have found Appellant guilty beyond a reasonable doubt, and reversal is inappropriate. See Campbell, 986 F.3d at 804. Therefore, the district court did not err in denying the motion for judgment of acquittal based on the sufficiency of the evidence.

IV.

For the foregoing reasons, we affirm.

_____