# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1723

_____

United States of America

*Plaintiff - Appellee*

v.

James Edward Watson, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: January 12, 2018
Filed: July 13, 2018

_____

Before LOKEN, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

James Watson was convicted after trial on one count of distributing five or more grams of actual methamphetamine, and was sentenced to 180 months' imprisonment. He appeals.

I.

The Arkansas Second Judicial District Drug Task Force conducted operations against repeat, violent drug offenders. Believing Watson to be such an offender, the task force employed a confidential informant (CI) to make controlled buys of methamphetamine from Watson.

On August 29, 2014, the CI arranged to meet Watson to buy methamphetamine. The controlled buy took an extended period of time, and the CI traveled with Watson to several different locations. Although the task force captured much of the transaction on audio and video surveillance, it did not capture everything. Thus, the complete course of events is known only to Watson and the CI. In the end, the CI said he paid Watson $3,000 for about 36 grams of actual methamphetamine.

On September 19, 2014, the CI again sought to buy methamphetamine from Watson. Watson and the CI set up the exchange, and the controlled buy was captured on audio and video surveillance. Watson purported to sell the informant methamphetamine, but the substance later turned out to be epsom salt.

A grand jury indicted Watson with one count of distributing five or more grams of actual methamphetamine for the August 29, 2014, controlled buy. See 21 U.S.C. § 841(a)(1), (b)(1)(B). The case proceeded to trial. Two pieces of evidence are particularly relevant on appeal.

First is evidence of Watson's history of violence, which the government sought to introduce to clarify why the task force became interested in Watson. Before trial, the government had sought to exclude any testimony about an excessive force lawsuit that Watson had filed against one of the task force officers involved in the criminal case. That lawsuit was settled right around the time of the controlled buys at issue.

Watson objected. The district court[1] ruled that Watson could present evidence of his theory that he was targeted because he had filed a lawsuit against one of the task force members—but if he did, that would open the door to allowing the government to introduce, in rebuttal, evidence of Watson's prior bad acts to show that the task force's interest was the result of his history of violence, rather than retaliation.

At trial, during cross-examination of the officer he had sued, Watson intimated that the task force targeted Watson in retaliation for the excessive force suit. At a bench conference, the district court determined that some, but not all, of the bad acts could come in because Watson had opened the door. The government said it wanted to introduce testimony of three allegations: (1) Watson had heated a knife and used it to burn the thighs of a victim, (2) Watson had committed domestic violence, and (3) Watson had assaulted police officers. Watson objected to the reliability of these allegations, but the district court overruled the objection and admitted the evidence.

The second piece of evidence is the September 19, 2014, controlled buy, which netted only epsom salt. Over Watson's objection, the government introduced testimony from the CI and video of the transaction. The CI testified that Watson had contacted him about doing another deal, and the CI had asked for four ounces of methamphetamine. The transaction occurred outside Watson's house and was depicted on the video.

At the close of the government's case, Watson moved for judgment of acquittal based on insufficiency of the evidence, which the district court denied. The jury returned a verdict of guilty.

---

[1]The Honorable Brian S. Miller, Chief Judge, United States District Court for the Eastern District of Arkansas.

At sentencing, the government sought an enhanced statutory minimum sentence pursuant to 21 U.S.C. § 841(b)(1)(B), having previously served the requisite notice and attached a record of Watson's state felony conviction for cocaine possession. See 21 U.S.C. § 851. Watson objected, arguing that doubling the statutory minimum from five to ten years was cruel and unusual punishment. He also objected to the calculation of his criminal history score, claiming that the presentence report scored charges that had been dismissed. With the enhanced mandatory minimum sentence, Watson's Guidelines range was 120 to 137 months. The district court varied upward to 180 months, based largely on Watson's pattern of violent conduct.

## II.

Watson appeals both his conviction and his sentence. Not all of the arguments Watson makes on appeal match those he made in the district court. As to those arguments, where Watson did not give the district court an opportunity to rule on his procedural arguments in the first instance, we apply plain error review. See Johnson v. United States, 520 U.S. 461, 465–66 (1997). Under that standard, we will reverse only if Watson shows "that there was an error, the error is clear or obvious under current law, the error affected [his] substantial rights, and the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Poitra, 648 F.3d 884, 887 (8th Cir. 2011).

## A.

### 1.    Evidentiary Errors

Watson argues that the district court erred by allowing the jury to hear about his prior violent acts and the September 19, 2014, controlled buy. To the extent Watson objected to admission of this evidence in the district court, we review admission of evidence for a clear abuse of discretion and will reverse only if

admission affected Watson's substantial rights. United States v. Picardi, 739 F.3d 1118, 1124 (8th Cir. 2014).

We look first to Watson's prior violent acts: using a heated knife to burn a victim, committing domestic violence, and assaulting a police officer. At oral argument, Watson conceded that he opened the door to this testimony. But, he argues, he did not open the door wide enough to admit the three highly prejudicial allegations introduced by the government. This is essentially a Rule 403 argument. Federal Rule of Evidence 403 grants the district court power to exclude relevant evidence "if its probative value is substantially outweighed by a danger of . . . unfair prejudice." "Unfair prejudice means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." United States v. Lupino, 301 F.3d 642, 646 (8th Cir. 2002) (cleaned up).

But Watson did not raise prejudice in the district court. He objected only that the reports may not be reliable, so we review this issue for plain error. It appears obvious that the three facts the government put into evidence are indeed prejudicial. It is not, however, clear or obvious that the district court erred in weighing that prejudice against the probative value of the evidence to explain the task force's motivation for targeting Watson. Moreover, the district court forewarned Watson that the prejudicial facts would be admitted if he questioned task force officers about the excessive force suit. When Watson opened the door, the district court limited the government to the three facts in question. And when the district court asked Watson if he wanted to make a record on the facts the government chose, Watson's only objection was that the evidence was not reliable. Under these circumstances, we discern no plain abuse of discretion.

We next consider the evidence of the attempted controlled buy on September 19, 2014. Watson argues that this evidence was inadmissible propensity evidence under Rule 404(b)(1); the government replies that it was intrinsic, "offered for the

-5-

purpose of providing the context in which the charged crime occurred." United States v. Thomas, 760 F.3d 879, 883 (8th Cir. 2014) (quoting United States v. Johnson, 463 F.3d 803, 808 (8th Cir. 2006)).  We need not resolve this dispute because, even if extrinsic, the evidence in question satisfies Rule 404(b)(2).  Under this Rule, "[e]vidence of a crime, wrong, or other act . . . may be admissible" for the purpose of "proving . . . intent . . . [or] knowledge." Fed. R. Evid. 404(b).  Watson's knowledge and intent were at issue for two reasons: 21 U.S.C. § 841(a)(1) requires that defendants know they are distributing a controlled substance, and Watson argued that he had been set up by the CI.  The disputed evidence, and the CI's testimony in particular, tended to show that Watson knowingly and intentionally engaged in the sale of drugs—even if, in this particular instance, he passed off epsom salt as methamphetamine.  That the September 19, 2014, sale occurred after the charged drug transaction is insufficient, in this case, to make admission of this evidence a clear abuse of discretion.[2]

## 2.    *Variance*

Next, Watson argues that the government impermissibly varied from the facts charged in the indictment.  "A variance arises when the evidence presented proves facts that are 'materially different from those alleged in the indictment.'" United States v. Buchanan, 574 F.3d 554, 564–65 (8th Cir. 2009) (quoting United States v. Begnaud, 783 F.2d 144, 147 n.4 (8th Cir. 1986)).  "Where the indictment 'fully and fairly' apprises the defendant of the allegations against which he must defend, prejudice is absent and any variance is harmless error." Id.  We review this issue de novo. United States v. Cole, 721 F.3d 1016, 1023 (8th Cir. 2013).

---

[2]This reasoning applies to all of the evidence of the September 19, 2014, counterfeit sale: the CI's testimony, the audio and video surveillance, and the video of Watson's interrogation.

No variance occurred here. Watson's indictment alleged that "[o]n or about August 29, 2014, in the Eastern District of Arkansas, [he] knowingly and intentionally distributed 5 grams or more of methamphetamine (actual) . . . ." At trial, the government introduced evidence to prove those facts. Watson argues that the government provided discovery that indicated the drug sale occurred at one address, but at trial sought to prove the sale occurred somewhere else. He makes no affirmative argument as to how the location of the drug sale—on which the indictment was silent—deprived him of fair notice of the allegations leveled against him. Accordingly, we conclude that any difference between the discovery materials and trial facts, to the extent there was such a difference, does not warrant reversal.

### 3.     *Motion for Judgment of Acquittal*

At the close of the government's evidence, Watson moved for judgment of acquittal, which the district court denied. On appeal, he contends this was error because the CI's testimony, on which the government's case relied, was not credible. We review this claim de novo, viewing the evidence in the light most favorable to the verdict. United States v. Lewis, 557 F.3d 601, 612 (8th Cir. 2009). We must affirm so long as a reasonable-minded jury could find Watson guilty beyond a reasonable doubt. Id.

The government had to prove that Watson "knowingly or intentionally . . . distribut[ed] . . . a controlled substance." 21 U.S.C. § 841(a)(1). Viewing the evidence in the light most favorable to the verdicts, we conclude the government did so. Watson arranged a drug transaction with the CI and then carried it out. Watson argues that a reasonable jury would not find the CI to be credible, but points us to nothing in the record that would establish *no* reasonable jury could trust the CI's testimony. It is the jury's province to assess the credibility of witnesses, and in this case they believed the CI's version of events. The district court properly denied

-7-

Watson's motion for judgment of acquittal, and the jury's verdict was supported by sufficient evidence.

## B.

Watson next argues that his 180-month sentence was procedurally flawed and substantively unreasonable. We review the district court's interpretation of the Guidelines de novo and its fact-finding for clear error. See United States v. Barker, 556 F.3d 682, 689 (8th Cir. 2009). We review the ultimate sentence for abuse of discretion. United States v. Feemster, 572 F.3d 455, 461 (8th Cir. 2009) (en banc).

As to procedural error, Watson argues that the district court failed to require the government to prove he was convicted of several offenses that were included in his criminal history score. See United States v. Charles, 389 F.3d 797, 799 (8th Cir. 2004) (noting that the government bears the initial burden of proving the fact of conviction). It is true that the district court did not put the government to its proof—the court merely overruled Watson's objections. But any error was harmless. Watson had nine prior sentences that were assessed 1 criminal history point each. Watson argued that three of those should not count because the charges were dismissed. Even if that is true, Watson's total number of 1-point sentences would be reduced to six. And whether Watson had six (as he argues) or nine (as the district court determined) 1-point sentences, only four of them counted for purposes of calculating his criminal history score. See USSG § 4A1.1(c).

Watson also objected to a sentence that received 3 criminal history points. This sentence was based on three counts: theft of property, fleeing in a vehicle causing danger, and fleeing on foot. See id. § 4A1.1(a). Watson objected that he was really only convicted of theft. Again, even if Watson is right, the sentence would still merit 3 criminal history points because Watson conceded he received more than 13 months

for this offense.  See id.; see also id. § 4A1.2(k).  In the end, any procedural error at sentencing did not affect the calculation of Watson's criminal history score.

As to substantive reasonableness, Watson argues that the district court abused its discretion by varying upwards.  In explaining its sentencing decision, the district court recounted Watson's long history of violent conduct.  The court then decided on a 180-month sentence, focusing in large part on the need to protect the community and to give Watson time to age out of criminality before being released back into society.  The district court properly weighed the 18 U.S.C. § 3553(a) factors, and we find no abuse of discretion.

III.

We affirm Watson's conviction and sentence.

_____