# United States Court of Appeals
### For the Eighth Circuit

_____

No. 17-3743

_____

United States of America

*Plaintiff - Appellee*

v.

Modesto Alfredo Torrez

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Fargo

_____

Submitted: March 15, 2019
Filed: May 31, 2019

_____

Before GRUENDER, BENTON, and GRASZ, Circuit Judges.

_____

GRASZ, Circuit Judge.

Modesto Torrez appeals his conviction for murder in furtherance of a drug trafficking conspiracy and other related charges, challenging several of the district court's[1] evidentiary rulings as well as one juror substitution at trial. We affirm.

---

[1]The Honorable Ralph R. Erickson, Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation at the time of judgment, was a

# I. Background

In 2016, a grand jury indicted Torrez and several alleged coconspirators, charging Torrez in four of the counts: (1) conspiracy to possess with intent to distribute and conspiracy to distribute 500 grams or more of a mixture and substance containing methamphetamine; (2) murder in furtherance of a drug trafficking conspiracy; (3) causing death by use of a firearm during a drug trafficking crime; and (4) obstruction of justice. All of the other alleged coconspirators named in the indictment pled guilty to at least one count of the indictment. Only Torrez proceeded to trial, which began in late September 2017.

According to evidence introduced at trial, the investigation into Torrez began in March 2016 at a Flying J Travel Center in Grand Forks, North Dakota. Police responded to an emergency call at the Flying J, where they found Austin Forsman dead in the front seat of a car, shot in the face. Two people who had arrived after the shooting told police to talk to Aaron Morado. He was one of Torrez's dealers, and he routinely sold methamphetamines to Forsman. In March 2016, a dispute developed between Morado and Forsman because Morado failed to timely supply meth that Forsman had purchased in advance. While the dispute between the two men did not turn violent, one of Torrez's associates ultimately shot Forsman at the Flying J and then drove Morado to meet up with Torrez and Lorie Ortiz.

The investigation into this shooting also helped confirm Torrez's role in an ongoing drug investigation. In late 2015, police received a tip that a person on probation in North Dakota had been selling meth in Grand Forks. A probation search of the house where that person was staying revealed meth, and he later admitted he obtained the meth from Ryan Franklin. In turn, Franklin told investigators that Torrez

United States District Judge for the District of North Dakota during the trial in this matter.

had arranged his meth supply, coordinating two trips to Minnesota where Franklin obtained five pounds and six pounds of meth, respectively.

After a five-day trial, a jury found Torrez guilty on three counts and guilty of aiding and abetting a fourth count (death caused by use of a firearm during a drug trafficking crime). The district court sentenced Torrez to life imprisonment, and he timely appealed.

## II. Analysis

Torrez raises five arguments on appeal. First, he argues that evidence of his prior conviction and supervised release status was improperly admitted. Second, he argues the district court violated his Confrontation Clause rights when admitting a laboratory report and related testimony. Third, he argues Lorie Ortiz was not a co-conspirator and that her statements were inadmissible. Fourth, he argues Ryan Franklin's testimony about being motivated to cooperate by someone else's cooperation violated the rule on not admitting guilty plea negotiations. Finally, he argues the district court erred by substituting a juror with the alternate juror.

### A.  Prior Conviction Evidence

Torrez's challenge to evidence of his prior conviction and other alleged wrongdoings is unpersuasive because the testimony at issue satisfies Fed. R. Evid. 404(b). "Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). "This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." *Id.* 404(b)(2). Because Torrez raises these objections for the first time on appeal, we review for plain error. *See United States v. Lee*, 374 F.3d 637, 649 (8th Cir. 2004).

Three statements are at issue on appeal. First, Franklin testified that he started dealing drugs again because of a debt he owed to Torrez from an older drug transaction. Second, Franklin's girlfriend, Sarah Landowski, testified that Franklin had told her he "had gotten a good opportunity from somebody that just got out of prison," referring to Torrez. Third, Sammy Torrez testified that he worked with Franklin on meth deals because his brother Torrez was at a halfway house in Fargo and could not participate directly.

Assuming that any of these references to Torrez's past involvement with drugs triggered Fed. R. Evid. 404(b)(1), they were permissible under Fed. R. Evid. 404(b)(2). The first two statements only clarify Torrez's motive for working with Franklin. The third statement concerns Torrez's motive for involving Sammy[2] in the relevant drug transactions. Thus, we see no plain error here in the district court's decision to admit the evidence.

## B.   Confrontation Clause

Any violation of Torrez's Confrontation Clause rights is not plain error because it did not affect his substantial rights.[3] "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The "witnesses" in this right are any person who bears testimony against a defendant. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 309 (2009). When a drug analysis report is offered at trial, the defendant has a right to confront the analyst

---

[2] We use Sammy's first name to distinguish him from his brother.

[3] We do not address the parties' dispute about whether Torrez's counsel knowingly and voluntarily waived his Confrontation Clause rights by not objecting because even if we found that forfeiture occurred rather than waiver, *see United States v. Olano*, 507 U.S. 725, 733 (1993), Torrez cannot satisfy more than the first two components of plain error review. *See United States v. Morrissey*, 895 F.3d 541, 554 (8th Cir. 2018).

who wrote the report. *Id.* at 311; *Bullcoming v. New Mexico*, 564 U.S. 647, 662 (2011). Torrez now objects to the admission of a drug analysis report without the analyst's testimony. Because he raises this issue for the first time on appeal, we review the decision to admit the evidence for plain error. *See Lee*, 374 F.3d at 649. "Under plain error review, there must be [1] an error [2] that is plain [3] which affects substantial rights." *Id.* The lab report at issue only confirmed about 410 grams of meth, while the jury found Torrez guilty of a conspiracy involving 500 grams or more of meth, meaning the jury must have found other evidence persuasive. The most relevant other evidence would appear to be the numerous witnesses who testified to meth transactions with Torrez, including the *multiple pounds*[4] of meth he helped Franklin acquire. The jury must have believed at least one of the other witnesses to convict Torrez of a conspiracy involving such a large quantity of meth. Because the jury's believing other witnesses was both necessary and sufficient to obtain Torrez's convictions, admitting the lab report (or testimony about it) could not affect Torrez's substantial rights. Thus, we hold no plain error occurred in the admission of the lab report and related testimony.

## C.   Co-conspirator Statements

The evidence of Lorie Ortiz's involvement in the drug trafficking conspiracy was sufficient to admit her out-of-court statements. In order to admit Ortiz's statements under Fed. R. Evid. 801(d)(2)(E), the Government needed to show: "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. King*, 351 F.3d 859, 865 (8th Cir. 2003) (quoting *United States v. Beckman*, 222 F.3d 512, 522 (8th Cir. 2000)). We review the district court's decision to admit the evidence for abuse of discretion,

---

[4]One pound is approximately 450 grams, which exceeds the amount of meth in the lab report.

although we arguably review for clear error the district court's factual findings on whether there is sufficient evidence for a jury to find that Ortiz was a co-conspirator. *See United States v. Mayfield*, 909 F.3d 956, 961 (8th Cir. 2018).

As in *Mayfield*, we need not resolve the standard of review issue to resolve this case because we see no error here. Ortiz's out-of-court statement at issue occurred on the night of Forsman's murder when, before she and Torrez went to meet up with others, she called her ex-boyfriend and asked him to come join them "for her protection" and to bring his gun. Evidence at trial showed Ortiz was often with Torrez for his drug dealing, she was with Torrez the night of Forsman's murder, and she also helped destroy phones involved in the murder. Even if she was only an accessory after the fact to Forsman's murder, as Torrez argues, the evidence of her involvement in the murder is still relevant to her state of mind regarding the drug conspiracy. *See United States v. James*, 564 F.3d 960, 963 (8th Cir. 2009) (noting that other bad acts are relevant to the state of mind of an alleged co-conspirator who uses a mere presence defense). Her request to her ex-boyfriend would also be in furtherance of the drug trafficking conspiracy because she wanted protection while helping Torrez with his dealers and their customers. On this record, the district court's finding that Ortiz was a co-conspirator was neither an abuse of discretion nor clear error.

## D.     Guilty Plea Negotiations

Torrez's allegation that the district court admitted evidence of guilty plea negotiations is unpersuasive and may involve invited error. Again, we review evidentiary rulings for abuse of discretion. *See United States v. Watson*, 895 F.3d 589, 594 (8th Cir. 2018). However, invited errors are generally unreviewable. *See United States v. Campbell*, 764 F.3d 874, 878 (8th Cir. 2014). After the district court ruled Franklin could not testify that *Torrez's* initial cooperation motivated him to cooperate, Torrez's counsel agreed to a leading question about whether *someone's*

-6-

cooperation motivated Franklin to cooperate. Even if counsel only meant to agree to the leading format of the question rather than the question itself, we are not convinced the question was errant. Like the district court, we see no implication of Torrez's cooperation from the vague reference to someone else's cooperation in this record. Thus, we hold no error occurred here.

**E.    Juror Substitution**

The argument about substituting jurors also fails because of invited error. Torrez's counsel agreed to swap the juror at issue with the alternate juror. Thus, the invited error doctrine precludes our review.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

_____