# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-1009
_____

United States of America

*Plaintiff - Appellee*

v.

Gary Sims

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock
_____

Submitted: April 16, 2021
Filed: June 1, 2021
_____

Before GRUENDER, BENTON, and SHEPHERD, Circuit Judges.
_____

BENTON, Circuit Judge.

A jury convicted Gary D. Sims of unlawfully distributing methamphetamine and of conspiring to distribute it, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B), and 846. The district court[1] sentenced him to 108 months in prison and five years

_____

[1]The Honorable Brian S. Miller, United States District Judge for the Eastern District of Arkansas.

of supervised release.  Sims appeals.  Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

## I.

In the summer of 2015, the Drug Enforcement Administration began investigating a Jonesboro meth-trafficking organization.  Freddie Capone led it, with Brian Holt as a partner, Matthew Martin as a distributor, and Jeremy Logwood and Sims as sources of supply.

The government charged that Sims—with the others—conspired to distribute meth from September 2014 until May 2016 "in the Eastern District of Arkansas, and elsewhere."  The government also charged that Sims distributed five or more grams of meth.  Capone, Holt, and Martin pled guilty.  Logwood and Sims proceeded to trial.  At trial, Holt and Martin testified.  There was also evidence of multiple controlled buys and intercepted communications.  During trial, Sims moved to dismiss the conspiracy count, alleging the evidence showed multiple conspiracies, not one conspiracy.  The district court denied the motion. The jury found Sims guilty of both counts.

At sentencing, the district court held Sims responsible for 99.05 grams of actual meth.  It imposed a within-guidelines sentence of 108 months in prison and five years of supervised release.

Sims appeals, asserting the evidence fatally varied from the indictment; the district court erroneously admitted hearsay; it abused its discretion by not polling a juror in isolation; and, it erred in calculating the drug quantity attributable to Sims.

## II.

Sims was charged with one conspiracy, but asserting a variance, he argues the evidence showed two: (1) between Capone, Martin, and himself distributing meth in

Missouri in September 2015, and (2) between Holt and Logwood distributing in Jonesboro in April and May 2016.

A variance between the indictment and the evidence at trial occurs only if the evidence proves multiple conspiracies, but the indictment alleges only one. *See United States v. Slagg*, 651 F.3d 832, 841 (8th Cir. 2011). Whether the government has proven a single conspiracy or multiple conspiracies is a question of fact for the jury. *United States v. McCauley*, 715 F.3d 1119, 1123 (8th Cir. 2013). This court reviews for clear error, considering the totality of the circumstances and drawing all reasonable inferences in favor of the verdict. *See United States v. Whirlwind Soldier*, 499 F.3d 862, 871 (8th Cir. 2007). *See also United States v. Mshihiri*, 816 F.3d 997, 1007 (8th Cir. 2016). Relevant factors include the nature of their activities, the location and time frame, and the participants. *United States v. Morales*, 113 F.3d 116, 119 (8th Cir. 1997). A single conspiracy may exist "even if the participants and their activities change over time, and even if many participants are unaware of, or uninvolved in, some of the transactions." *Mshihiri*, 816 F.3d at 1007.

Here, viewed in the light most favorable to the verdict, one conspiracy existed between Sims, Capone, Holt, Martin, and Logwood. Testimony, controlled buys, and intercepted communications show a conspiracy with a shared goal of distributing meth in northeast Arkansas. Martin testified that Sims supplied meth for distribution in both St. Louis and Jonesboro. The normal procedure was for Martin "to put the number in" to Capone, who would call Sims to drop off the meth at Capone's house for Martin to distribute. Multiple controlled buys confirm this. In a September 2015 buy, at Capone's direction, Sims sold Martin 25.9 grams of actual meth at Sims's residence in northeast Arkansas. Seven months later, Capone texted Holt, "Gary got some in"—meaning Sims had meth to supply Holt's customers in northeast Arkansas. Later that month, Holt texted Capone, "Is Gary ready[?] I got 2 call so we can talk"—a request for meth for another buy. Capone, on behalf of Holt, then texted Sims, asking if he could supply two ounces of meth for a buyer in northeast Arkansas. Sims replied that he "saw his dude the other night at a liquor store, told me to holler at him"—meaning he saw his source. Five hours

later, Sims texted, "Nope I don't have"—meaning he could not supply the meth. Logwood supplied the two ounces. A month later, Holt asked Capone for Sims's phone number to contact him for meth for future customers in northeast Arkansas.

A reasonable juror could conclude that there was a single conspiracy to distribute meth in northeast Arkansas, and each participant was integral to it. Throughout, Sims was a source of supply. The district court did not clearly err in denying the motion to acquit on this issue. *See Slagg*, 651 F.3d at 842 (affirming conviction on a single conspiracy where evidence showed common goal of selling meth in one state during a two-year period).

Even if a variance occurred, reversal is warranted only if it infringes Sims's substantial rights. *See United States v. Johnson*, 719 F.3d 660, 669 (8th Cir. 2013). A variance infringes substantial rights when "(1) the defendant could not reasonably have anticipated from the indictment the evidence to be presented against him; (2) the indictment is so vague that there is a possibility of subsequent prosecution for the same offense; or (3) the defendant was prejudiced by a 'spillover' of evidence from one conspiracy to another." *Id*.

Sims raises neither notice nor double-jeopardy concerns. He asserts only a spillover of evidence from one conspiracy to another. The issue is whether any spillover has prejudiced him. There is little risk of prejudice from spillover evidence if the alleged multiple conspiracies were so "close in time and similar to each other" that evidence of both conspiracies would have been admitted under Federal Rule of Evidence 404(b) as probative of intent to participate in the other conspiracy. *See United States v. Barth*, 424 F.3d 752, 760 (8th Cir. 2005). Here, the alleged conspiracies were similar to each other (both distributing meth) and close in time (within six to seven months). *See United States v. Ghant*, 339 F.3d 660, 664 (8th Cir. 2003) (holding that two alleged conspiracies were similar to each other (both distributing cocaine) and close in time (within a year). The evidence of Sims's participation in one conspiracy would have been probative of his intent to participate in the other and, thus, admissible under Rule 404(b).

-4-

The jury instructions here also reduced any risk of prejudice. *See United States v. Cubillos*, 474 F.3d 1114, 1119 (8th Cir. 2007). The district court instructed the jury on multiple conspiracies: "One of the issues you must decide is whether there were really two (or more) separate conspiracies—such as one between Freddie Capone and Jeremy Logwood and another one between Freddie Capone and Gary Sims—to commit the crime of possession with intent to distribute and to distribute methamphetamine." The instructions directed the jury to acquit if it found Sims participated only in a conspiracy other than the one charged.

The evidence showed one conspiracy, and even if a variance occurred, there was no prejudice to Sims.

III.

Sims argues the district court erred in admitting statements under the coconspirator exception because they were not in furtherance of the conspiracy. By Federal Rule of Evidence 801(d)(2)(E), a statement is not hearsay if offered against an opposing party and "made by the party's coconspirator during and in furtherance of the conspiracy." **Fed. R. Evid. 801(d)(2)(E)**. To admit out-of-court statements under this Rule, the government must prove "(1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Torrez*, 925 F.3d 391, 395 (8th Cir. 2019). The phrase "in furtherance of the conspiracy" is broadly interpreted. *See United States v. Cazares*, 521 F.3d 991, 998-99 (8th Cir. 2008). Any statement discussing the supply source, identifying a coconspirator's role, indicating the quantity of drugs, or providing information on the enterprise's scope furthers the conspiracy. *See id.*; *United States v. Jordan*, 260 F.3d 930, 933 (8th Cir. 2001).

First, Sims challenges the admission of a recorded conversation between Capone and Martin on March 31, 2016. On that date, Martin bought oxycontin from Capone (who was still a member of the conspiracy) and discussed the meth

-5-

operation. Martin testified that Capone told him Sims still had meth, and the price increased from $800 to $900 for higher quality meth. Martin and Capone also discussed Holt. Martin testified Capone was "catching [Martin] up to speed with what they had been doing." These statements identify Sims's role in the conspiracy, were made in furtherance of the conspiracy, and were admissible.

Second, Sims challenges the admission of four recorded calls between Capone and Holt in April 2016. In the first two calls, Holt asked Capone whether Sims could supply two ounces of meth. In the third call, Holt says, "Whether we go to Gary or my guy," meaning deciding whether to buy from Sims or Logwood. These calls show that Capone and Holt, members of a conspiracy trying to get meth to sell, were discussing Sims as a source of supply, clearly identifying his role in the conspiracy. These calls were made in furtherance of the conspiracy to distribute meth and were admissible.[2]

## IV.

Sims argues the district court erred by failing to poll a juror in isolation and by failing to ask the jury if the verdict was coerced. After the jury returns a verdict, "the court must on a party's request . . . poll the jurors individually." **Fed. R. Crim. P. 31(d)**. A jury poll gives "each juror an opportunity, before the verdict is recorded, to declare in open court his assent to the verdict," and ensures that "a unanimous verdict has in fact been reached and that no juror has been coerced or induced to agree to a verdict to which he has not fully assented." *United States v. Amaya*, 731 F.3d 761, 765 (8th Cir. 2013).

---

[2]The standard of review remains unsettled. *See United States v. Mayfield*, 909 F.3d 956, 961 (8th Cir. 2018), *cert. denied*, 139 S. Ct. 2628 (2019). This court arguably reviews for clear error the district court's factfinding about Rule 801(d)(2)(E), and reviews for abuse of discretion the admission of the statements. *See id.* S*ee also Torrez*, 925 F.3d at 395. As in *Mayfield* and *Torrez*, this court need not resolve the standard-of-review issue because there is no error here.

Rule 31(d) is "silent on the precise method of polling the jury." **Fed. R. Crim. P. 31(d) advisory committee's notes to 1998 amendments**. *See United States v. Miller*, 59 F.3d 417, 419 (3d Cir. 1995) ("Fed. R. Crim. P. 31(d) does not specify any specific form" for polling a jury.). This court reviews the method for juror polling for abuse of discretion. *Amaya*, 731 F.3d at 765. This court pays "due deference" to the district court's polling procedures because "the trial judge is present on the scene." *Amos v. United States*, 496 F.2d 1269, 1273 (8th Cir. 1974) (finding the district court did not abuse its discretion by interrogating a juror to clarify confusion about a juror's response).

As the jury deliberated, the foreperson wrote a note, relaying that Juror No. 4 wanted to be dismissed because of "mental stress, blood pressure." The district court declined to dismiss the juror and directed the jury to continue deliberating. After the jury announced its verdict, Sims first requested that the district court poll Juror No. 4 "individually and separately," and then requested the district court ask each member of the jury whether they were coerced. The district court declined both requests of polling, instead asking each individual juror in open court, "[I]s this your verdict?" In response, each juror responded, "Yes."

Nothing in the record demonstrates coercion. Nothing in the record shows that the jury's verdict was not unanimous. The district court polled each juror individually. Each one, including No. 4, agreed the verdict was his or her own. Nothing in the record indicates mental stress and blood pressure resulted from coercion. Juror No. 4 never said or indicated that her verdict was coerced. Thus, the district court did not abuse its direction.

Citing *United States v. Badolato*, Sims asserts his requested methods of polling would have ensured that Juror No. 4's verdict was not coerced. *See United States v. Badolato*, 710 F.2d 1509, 1513-15 (11th Cir. 1983) (upholding a verdict after a court polled two jurors individually and separately). Unlike the "unusual situation" in *Badolato*, where a juror claimed the verdict was not his and jurors appeared coerced to accept the verdict, the district court here found no need for

isolated polling. *See id*. The district court did not abuse its discretion by not polling Juror No. 4 individual and separately.

V.

Sims argues the district court erred when calculating the quantity of drugs attributable to him. The government bears the burden of proving drug quantity by a preponderance of the evidence. ***United States v. Sainz Navarrete***, 955 F.3d 713, 720 (8th Cir. 2020). This court reviews challenges to the drug quantity calculation for clear error. ***United States v. Plancarte-Vazquez***, 450 F.3d 848, 852 (8th Cir. 2006). Calculating drug quantity, "the sentencing court may consider all transactions known or reasonably foreseeable to the defendant that were made in furtherance of the conspiracy." ***Sainz Navarrete***, 955 F.3d at 720. "It is well-established that the testimony of co-conspirators may be sufficiently reliable evidence upon which the court may base its drug quantity calculation for sentencing purposes." ***Plancarte-Vazquez***, 450 F.3d at 852. This court reverses only when "the entire record definitely and firmly illustrates that the lower court made a mistake." ***Sainz Navarrete***, 955 F.3d at 720.

The Presentence Investigation Report held Sims responsible for 99.05 grams of actual meth, based on: three controlled buys in July 2015 where Capone supplied Martin with 1.8 grams, 18.9 grams, and 2.45 grams of actual meth for a confidential informant; a delivery by Martin supplied by Capone of 50 grams of actual meth to St. Louis in July 2015; and, a delivery by Sims to Martin of 25.9 grams of actual meth in September 2015. Sims objected to the PSR, except for the last delivery. At the hearing, the district court agreed with the PSR's 99.05 grams.

Sims contends he should have been held responsible only for 25.9 grams (the last delivery), arguing there is no evidence that he supplied the other 73.15 grams to Capone. Based on the evidence from the trial, the district court did not clearly err in attributing 99.05 grams of actual meth to Sims. Sims's role in the furtherance of the conspiracy was not limited to a single transaction. Martin, a coconspirator, testified

-8-

that the meth operation began in late 2014, and Sims was a source of the supply. The normal procedure in 2014 and 2015 was for Sims to drop off the meth at Capone's house, which Martin would then distribute. Martin testified that he viewed Sims directly hand meth to Capone at least 50 times. The district court did not clearly err in calculating the drug quantity.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____