# United States Court of Appeals

## For the Eighth Circuit

_____

No. 20-3056

_____

United States of America,

*Plaintiff - Appellee,*

v.

Roy William Burris, Jr., also known as Glasses, also known as Goggles, also known as Lentes, also known as Bota Roja, also known as Frank White,

*Defendant - Appellant.*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: September 24, 2021
Filed: January 6, 2022

_____

Before LOKEN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

A jury convicted Roy Burris of conspiracy to distribute and possess with intent to distribute five kilograms or more of cocaine. *See* 21 U.S.C. §§ 846, 841(b)(1)(A).

The district court[1] sentenced Burris to 300 months' imprisonment, and Burris appeals several of the district court's rulings. We conclude that there is no reversible error, and therefore affirm.

## I.

Burris and Oscar Dillon, III, were tried together on a charge of conspiracy to distribute cocaine. According to evidence at trial, Burris was involved in the distribution of cocaine in both California and Missouri. Proceeding chronologically, the evidence begins in February 2016. At that time, Burris attempted to pass through airport security screening at the Long Beach Airport in California with a bag containing a pistol. Police officers arrested Burris and seized from his person seven cellular phones, cash wrapped in a rubber band, gift cards, and "miscellaneous papers with numbers and notes on them." The latter appeared to be notes of "payments and money owed." Investigators later obtained a search warrant for the seven cell phones and found text messages, photos, and videos that connected Burris with a conspiracy to distribute cocaine.

On March 30, 2016, after Burris was released on the February arrest, investigators conducted surveillance at a residential complex in Hawaiian Gardens, California. Officers observed Burris participate in an exchange of two bags between two cars, and they believed that it was a drug transaction. Police sought to arrest Burris, but he tried to evade them by driving his car onto a sidewalk and toward an officer. Police eventually apprehended Burris and took him into custody.

On the same day, officers executed a search warrant at the home of Burris's mother in the residential complex. They found five kilograms of cocaine, $124,900

[1]The Honorable Rodney W. Sippel, Chief Judge, United States District Court for the Eastern District of Missouri.

in cash, and a firearm case for the pistol that officers seized from Burris at the Long Beach Airport.

A confederate of Burris's, Edgar Roque, testified that he and Burris had coordinated a Hawaiian Gardens drug transaction in March 2016 after which Burris was arrested. Several witnesses at trial described a five-kilogram cocaine sale that occurred between Roque and Burris on that day. Roque explained that his cocaine supplier, Cazares, had terminated the business relationship after the Hawaiian Gardens seizure, and that Roque found a new supplier named Avendano. Roque and Burris then traveled to Mexico to meet with Avendano about distributing cocaine in St. Louis. After the meeting, Avendano agreed to ship ten kilograms of cocaine to St. Louis for Roque and Burris to distribute there.

In September 2016, investigators identified a UPS package containing ten kilograms of cocaine that was delivered to Oscar Dillon, III, in St. Louis. They arrested Dillon and found that he possessed five cellular phones. One of the phones contained text messages in which Burris provided Dillon with information and direction about the delivery of cocaine in St. Louis. Before the delivery, Dillon asked Burris to specify the time of delivery. Burris informed Dillon of the amount of cocaine to be delivered, told Dillon that he should be at the delivery location to accept the package, answered a question from Dillon about who was allowed to accept the package, and updated Dillon on the status of the delivery.

After a trial, a jury convicted Burris on the drug trafficking conspiracy charge. The district court resolved several disputes under the sentencing guidelines, and sentenced Burris within the advisory guideline range to a term of 300 months' imprisonment.

## II.

Burris first argues that the district court should have suppressed evidence found in the seven cell phones that were seized during his arrest at the Long Beach Airport. The phones contained text messages in which Burris communicated about drugs with other members of the conspiracy, as well as photographs and videos in which Burris appeared with other members of the conspiracy. Burris maintains that the seizure of the phones, although reasonable at the inception, became unreasonable when investigators delayed nearly eight months before applying for a search warrant. *See Segura v. United States*, 468 U.S. 796, 812 (1984). He contends that the government was required within a reasonable time to demonstrate cause to search the devices, and then to show that the phones contained incriminating evidence that justified a continued interference with Burris's possessory interest.

Delay in searching a phone is immaterial to the reasonableness of a seizure, however, when the device has independent evidentiary value. If a cellular phone is evidence of a crime regardless of its contents, then the government is justified in retaining the device on that basis alone. *See United States v. Smith*, 967 F.3d 198, 209 (2d Cir. 2020); *United States v. Mitchell*, 565 F.3d 1347, 1352 (11th Cir. 2009) (per curiam).

In this case, the seven cell phones seized from Burris had evidentiary value independent of their contents. The government seized a gun, cash, and other evidence that Burris was involved in drug trafficking. That Burris possessed seven cell phones is further evidence that he was involved in the drug trade, as traffickers often use multiple phones to avoid detection and to compartmentalize different points of contact in the drug dealing business. *United States v. Spires*, 628 F.3d 1049, 1053 (8th Cir. 2011); *United States v. Thompson*, 881 F.3d 629, 633 (8th Cir. 2018). Because the phones had evidentiary value independent of the data on the phones, the eight-month seizure of the devices before they were searched was not unreasonable.

Burris next challenges the district court's decision to reject his proposed instruction on multiple conspiracies. The proposed instruction provided that the jury must decide whether there were really two (or more) separate conspiracies, namely, one among Roque, Cazares, and Burris, and another among Roque, Avendano, and others, but not Burris. R. Doc. 412, at 2. The district court denied the proposed instruction. The court explained that the indictment charged a single conspiracy, and that Burris was free to argue that he was not part of the conspiracy. But the court believed that it would be incorrect to give an instruction that listed a second conspiracy that did not include Burris when there was evidence that he participated in that asserted conspiracy. The court further observed that a single conspiracy is not converted to multiple conspiracies simply because different conspirators enter the agreement at different times or perform different functions.

Burris renews his contention on appeal. He maintains that the evidence showed two conspiracies—a small California conspiracy in which he participated, and a larger St. Louis conspiracy in which he did not. As such, he argues that the evidence supported a multiple conspiracy instruction, and that the district court abused its discretion by declining to give it. He contends that the lack of a multiple conspiracy instruction caused prejudice, because some jurors might have convicted based on the California evidence alone, even though he was not part of a "totally different agreement" to distribute drugs in St. Louis.

We discern no abuse of discretion in the district court's instructions. Where "the evidence substantially points to a single conspiracy," the district court need not give an instruction on multiple conspiracies. *United States v. Davis*, 882 F.2d 1334, 1341-42 (8th Cir. 1989) (internal quotation omitted). This is such a case. Although there was evidence that Roque identified a new Mexican cocaine supplier after the seizure of drugs from Burris in California, and that Roque and Burris then began to distribute drugs in Missouri, it is well settled that the introduction of a new conspirator or an expansion of activity to new territory does not create a new

-5-

conspiracy. That Burris paid Roque up front for drugs in California and later split profits with Roque in Missouri also does not necessitate an instruction on multiple conspiracies. "A single conspiracy is not converted to multiple conspiracies simply because different defendants enter a conspiracy at different times or perform different functions." *United States v. Perez-Trevino*, 891 F.3d 359, 372 (8th Cir. 2018); *see United States v. Delgado*, 653 F.3d 729, 736 (8th Cir. 2011). Although the relationship between conspirators may have evolved, the evidence here showed that Roque and Burris were engaged in an ongoing agreement to distribute drugs that involved more than one supplier and more than one location. The compressed time frame—the conspirators had conducted a cocaine transaction in California only six months before the ten-kilogram shipment to St. Louis—fortifies this conclusion. *See United States v. Sims*, 999 F.3d 547, 552 (8th Cir. 2021).

Burris's suggested instruction suffered from other shortcomings. While the district court might have added general language emphasizing that the government must prove the conspiracy charged in the indictment, as opposed to some other conspiracy, *e.g.*, *United States v. Sawyers*, 963 F.2d 157, 161 & n.4 (8th Cir. 1992), that is not the language that Burris requested. His proposed instruction called for the court to specify that the jury must decide whether there were two conspiracies—one in California that included Burris, and another in Missouri that involved Roque, Avendano, and others, but not Burris. The district court properly concluded that such an instruction was not required by the law or adequately supported by the evidence.

The potential that the instructions prejudiced Burris is also minimal. The existence of multiple conspiracies would raise the possibility of a variance between the conspiracy charged in the indictment and the conspiracy proved at trial. In that event, a defendant might be prejudiced by the "spillover" of evidence from one conspiracy to another. *United States v. Jones*, 880 F.2d 55, 66 (8th Cir. 1989). But where, as here, the evidence shows that the defendant was a member of both alleged conspiracies, "the danger of prejudice from [spillover] is minimal, if not non-

existent." *Id.* (quoting *United States v. Scott*, 511 F.2d 15, 20 (8th Cir. 1975)). We note also that the jury, in convicting Burris, was required to find that the offenses charged "were begun, continued or completed in the Eastern District of Missouri," so it is unlikely that the jury could have convicted Burris of participating in a separate conspiracy based entirely in California.

In a related argument, Burris asserts that evidence of his drug trafficking activity in California should not have been admitted at trial. Because the record supports a finding that the California activity was undertaken as part of the charged conspiracy, the district court properly admitted that evidence. *See United States v. Stephenson*, 924 F.2d 753, 762 (8th Cir. 1991).

III.

Burris also raises claims of procedural error at sentencing. He contends that the district court mistakenly calculated the advisory guideline range in several respects. We review the district court's factual findings for clear error and its application of the guidelines *de novo*. *United States v. Resinos*, 631 F.3d 886, 887 (8th Cir. 2011).

Burris first objects to the district court's calculation of drug quantity. He argues that some of the drugs counted were not relevant conduct to the charged conspiracy. "In a drug conspiracy, a defendant is held responsible for all reasonably foreseeable drug quantities that were within the scope of the criminal activity that he jointly undertook." *United States v. Vinton*, 429 F.3d 811, 817 (8th Cir. 2005); *see* USSG § 1B1.3(a)(1)(B). The court is not limited to consideration of seized drugs and may consider testimony and other evidence to estimate a quantity that represents the scale of the offense. *United States v. Roach*, 164 F.3d 403, 413 (8th Cir. 1998).

The district court determined Burris was responsible for 106 kilograms of cocaine: 9.9 kilograms seized in St. Louis, 5.1 kilograms seized in Los Angeles, 53 kilograms established by drug ledgers and forensic analysis of Burris's cell phones, and 18 and 20 kilograms of cocaine based on two other transactions that Roque described to investigators. These findings are supported by the record. Burris's challenge is based largely on his contention that the California drug trafficking activity was not part of the charged conspiracy, but the district court did not err in concluding that the government's evidence established a jointly undertaken activity that encompassed the events cited in the quantity finding. The district court did not clearly err in finding that Burris was responsible for 106 kilograms of cocaine.

Burris next objects to a four-level increase for aggravating role in the offense. That increase applies when the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. *See* USSG § 3B1.1(a). The district court found that there were at least eight participants in Burris's criminal activity, that it was otherwise extensive, and that Burris was a leader in the organization. The court cited evidence that Burris and Roque agreed to split the profits, that Burris traveled to Mexico to meet with Roque and Avendano to negotiate sales and distribution of cocaine in St. Louis, and that Burris clearly directed the activities of Oscar Dillon in St. Louis in arranging for the delivery of cocaine.

Burris argues that because Dillon was acquitted at trial, Burris did not direct or supervise any other participant. The guideline, however, provides that a "'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." USSG § 3B1.1, comment. (n.1). Although Dillon was not convicted, the court found by a preponderance of the evidence that he was a participant, and that Burris directed Dillon's activities. This finding is adequately supported by evidence that Dillon, at Burris's direction, received a package that he knew to contain cocaine at a bar in St. Louis. Burris also

contends that his criminal activity involved only four participants, because it was limited to activity in St. Louis, while the district court counted participants from California. The court, however, did not clearly err in finding that Burris's drug activity in the two locations constituted a single conspiracy and a jointly undertaken criminal activity for purposes of the guidelines. The district court thus did not err in finding that Burris played an aggravating role that justified a four-level increase.

Burris next argues that the district court incorrectly applied a two-level increase for possession of a firearm. *See* USSG § 2D1.1(b)(1). This specific offense characteristic reflects the increased danger of violence when drug traffickers possess weapons. The increase should be applied when a firearm was present, "unless it is clearly improbable that the weapon was connected with the offense." *Id.*, comment. (n.11(A)). The district court found no such clear improbability, given that the weapon was "found along with seven phones, drug ledgers, and even other parts of the case for the gun [were] found with drugs and money in his mother's residence in California." Burris again argues that the events in California were not part of the charged conspiracy, but the district court did not err in concluding that Burris's drug trafficking activity in California was relevant conduct for purposes of the guidelines. The district court did not clearly err in applying this two-level increase.

Burris also challenges a two-level increase for reckless endangerment during flight. *See* USSG § 3C1.2. This increase applies if the defendant "recklessly created a substantial risk of death or serious bodily injury to another person in the course of fleeing from a law enforcement officer." *Id.* The district court found that when Burris was "confronted with law enforcement" after an apparent drug transaction in California, he drove "at a high rate of speed, veering on and off the sidewalk into the street, accelerating towards a police vehicle, almost hitting a pedestrian." Burris argues that the incident is not relevant conduct because it occurred in California, but the district court again did not err in finding that the activity was part of the charged conspiracy and relevant conduct for purposes of the guidelines.

\* \* \*

The judgment of the district court is affirmed.

_____