# United States Court of Appeals
## For the Eighth Circuit

_____

No. 21-3288
_____

United States of America

*Plaintiff - Appellee*

v.

Bruce Edward McGee

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: May 9, 2022
Filed: August 15, 2022
[Unpublished]
_____

Before SMITH, Chief Judge, WOLLMAN and SHEPHERD, Circuit Judges.
_____

PER CURIAM.

While on supervised release, Bruce McGee committed four violations of a no-contact order involving the mother of one of his children. The government served her with a subpoena to appear at his revocation hearing but after the hearing was rescheduled, the government was unable to re-serve her after multiple attempts. The government's witnesses testified that she evaded service at her residence and that

McGee had instructed her not to accept service. At the hearing, the district court[1] determined that the government had established that all four violations had occurred. The court sentenced McGee to 16 months' imprisonment followed by 24 months' supervised release with a special condition of no contact with his child's mother. He appeals his sentence, arguing that the court erred by (1) admitting into evidence a police report containing her hearsay statements and (2) imposing the special condition of no contact. We affirm.

## I. *Background*

McGee pleaded guilty to one count of distribution of heroin and was sentenced to 13 months' imprisonment in August 2017. He began his five-year term of supervised release in January 2018. In August 2021, he committed two of the violations at issue, which prompted his probation officer to file a petition for revocation of his supervised release. McGee committed (1) a "Violation of a No[-]Contact Order; Domestic Abuse Assault, Impeding Flow of Air/Blood," and (2) a "Violation of a No[-]Contact Order; Criminal Mischief, Second Degree." R. Doc. 443, at 1. Both violations involve the no-contact order involving Tysonda Millsap, the mother of one of McGee's children.

The petition described the conduct underlying the first violation as McGee grabbing and choking Millsap following a domestic argument at her residence. McGee stopped choking her and left after being confronted by Millsap's teenage son. The second violation also occurred at Millsap's residence. McGee forcibly entered her home, breaking the door frame, threw a brick through one of the windows, and damaged her car.

---

[1]The Honorable Rebecca Goodgame Ebinger, United States District Judge for the Southern District of Iowa.

The district court issued a warrant for McGee's arrest. After his arrest, the court scheduled his revocation hearing for September 2021. The government served Millsap with a subpoena to appear at the hearing. The hearing was then continued until later in September due to McGee obtaining appointment of new counsel. Before the date of the continued hearing, McGee's probation officer filed the first addendum to the petition alleging a third violation of the no-contact order, described as follows: "According to the jail phone system, between August 26 and September 10, 2021, [McGee] had 74 recorded phone calls with two different phone numbers associated with . . . Millsap." R. Doc. 464, at 1.

The government made several unsuccessful attempts to re-serve Millsap with a subpoena to appear at the continued hearing. The hearing, consequently, was continued a second time until October 2021 to enable the government to make further attempts to re-serve her. Before the date of the second-continued hearing, McGee's probation officer filed the second addendum to the petition alleging a fourth violation of the no-contact order, described as follows: "Between September 17 and September 30, 2021, [McGee] completed 42 phone calls to . . . Millsap's new phone number." R. Doc. 467, at 1.

At the hearing in October 2021, the government offered and the district court admitted as an exhibit the police report documenting the first violation of the no-contact order. McGee only objected to the police report's admission on the basis of Millsap's hearsay contained in the report:

> Millsap reports that her child's father (McGee) with whom she has a no[-]contact order just came over and assaulted her. Millsap has a current no[-]contact order with McGee . . . . Millsap reports that McGee came over upset about the male she was talking to. McGee is upset because the male (boyfriend) she's talking to shot McGee's brother. Millsap stated that while talking with McGee in the house . . . he grabbed her by the arm and pushed her down on the couch. McGee then

put one hand around her throat, preventing her from breathing normally. At this time Millsap's son . . . entered the room and told McGee to get off his mom. Millsap told [her son] to call 911 for help. McGee then got off Millsap, went out to his vehicle and left. . . . Millsap stated that [the] right side of her throat hurt.

R. Doc. 470-1, at 3 (emphasis omitted).

At the hearing, the government provided testimony to support admission of the full report. Deputy U.S. Marshal Shane Bellis testified that the first time he attempted to serve Millsap, (1) no one answered when he knocked on her door, (2) he noticed curtains inside her home open and close, and (3) Millsap's neighbor said that she observed Millsap arrive home in the car parked in Millsap's driveway. Deputy Bellis testified that he taped the subpoena to Millsap's front door along with his business card and that he called her but she never answered. He also testified that he and another deputy, who was disguised as a delivery man, attempted to re-serve Millsap again. When the other deputy knocked on the door, a teenage boy spoke through the closed door and said that his mother was not home. When the other deputy asked when Millsap would be home the boy walked away from the door, returned about a minute later, and told the deputy to leave. As the other deputy left, Deputy Bellis observed the boy open the front door to watch the deputy leave. He also saw the boy speak with another person in the residence. Deputy Bellis then taped copies of the subpoena to a different door, to Millsap's car, and to another car in the driveway. When he approached the residence, he could hear voices inside, including a female voice.

McGee's probation officer, Amy Johnson, also testified at the hearing. Officer Johnson testified that Millsap was the female on the other end of McGee's calls from prison based on the following facts: (1) the initial phone number that McGee called was the same number that Millsap gave to police following the assault; (2) McGee and the female discussed the no-contact order, his charges, his supervised release

-4-

proceedings, that the female had been served with a subpoena, the attempts at re-serving the female, and how the female should respond if she was re-served; and (3) the female voice was the same from the three phone numbers. Officer Johnson also testified to the following conversations between McGee and Millsap: (1) he told her that if she was not re-served that she did not have to testify; (2) he expressed that he did not want her to testify; (3) she told him that she would not testify; (4) she said she would be okay with being fined for failing to testify; (5) he told her that if she has to testify she can say, "I don't recall, and I plead the Fifth"; (6) she agreed to say that; (7) she was on the phone with him when the government attempted to re-serve her the first time; and (8) he told her not to go outside. R. Doc. 478, at 28.

The district court noted that "the only objection that was posed [to the admission of the police report into evidence] was to the statements made by [Millsap]," and the court admitted the exhibit. *Id*. at 44. It concluded that "the [g]overnment ha[d] established by a preponderance of the evidence all four of the violations." *Id*. at 47. With the most serious grade of his violations being Grade A and a criminal history category of II, McGee's Guidelines range was between 15 to 21 months' imprisonment. The court sentenced him to 16 months' imprisonment, followed by 24 months' supervised release, with a special condition of no contact with Millsap. He did not object to the special condition.

## II. *Discussion*
### A. *Admissibility of Police Report*

McGee argues that the district court erred by admitting the police report because it contains hearsay statements by both Millsap and the authoring officer. "While we would ordinarily review challenges to the admission of hearsay evidence for abuse of discretion, when an appellant claims that the government violated his due process rights, we review that challenge de novo." *United States v. Coleman*, 7 F.4th 740, 744 (8th Cir. 2021).

At the revocation stage, . . . . [Federal Rules of Criminal Procedure] Rule 32.1(b)(2)(C) . . . requires the district court to provide defendants an opportunity to question any adverse witnesses unless the court determines that the interest of justice does not require the witness to appear.

In assessing whether a defendant should have been allowed to confront an adverse witness, we balance his due process rights against the grounds asserted by the government for not requiring confrontation. The *Bell*[2] test provides: to show good cause for denying a defendant his confrontation rights, the government must show that confrontation is undesirable or impractical and that the evidence which the government offers in place of live testimony is reliable.

Thus, the district court needed to assess: (1) the government's reason for not producing [Millsap]; and (2) the reliability of the hearsay offered in place of her testimony.

*Id.* at 744–45 (cleaned up).

"[W]here the district court has failed to engage in the balancing analysis set forth in *Bell*, but the underlying facts have been sufficiently developed," as is the case here, "this court may itself perform the *Bell* analysis on review." *United States v. Martin*, 382 F.3d 840, 845 (8th Cir. 2004). The district court understood the government's reason for not producing Millsap to be "her . . . refusal to accept service . . . at the direction of [McGee]." R. Doc. 478, at 47. Based on these facts, we hold that the government provided sufficient justification for not producing Millsap. *See Martin*, 382 F.3d at 846. Deputy Bellis testified about Millsap's evasion of their re-service attempts. Officer Johnson testified about Millsap's statements made during calls with McGee that (1) she would not testify; (2) she would be okay with being fined for failing to testify; and (3) she would say, "I don't recall, and I plead the

---

[2]*United States v. Bell*, 785 F.2d 640 (8th Cir. 1986).

Fifth," if she was asked to testify. R. Doc. 478, at 28. Officer Johnson also noted that Millsap obliged McGee's request to not go outside when the government attempted to re-serve her the first time.

The record also shows that Millsap's statements—made to the report's authoring officer shortly after McGee assaulted her—were sufficiently reliable. We have held that hearsay statements are reliable under the second *Bell* prong in part when they "were spontaneous." *United States v. Martin*, 371 F.3d 446, 449 (8th Cir. 2004). Balancing McGee's due process rights against the grounds asserted by the government for not requiring confrontation, we hold that McGee's rights were not violated by the admission of the police report. *See Martin*, 382 F.3d at 846 ("[W]e hold that the government met its burden to show good cause for not producing [the witness] . . . at the revocation hearing. . . . The admission of [the witness'] out-of-court statements at [the defendant's] supervised release revocation hearing did not violate [the defendant's] constitutional rights or Fed. R. Crim. P. 32(b)(2)(C).").

McGee "now objects for the first time on appeal that the exhibit should have been inadmissible without the [officer] who authored the report testifying or an analysis on why it was impractical or undesirable to have [the officer] testify." Appellant's Br. at 20. We review for plain error. *See United States v. Torrez*, 925 F.3d 391, 395 (8th Cir. 2019) (reviewing "the admission of a drug analysis report without the analyst's testimony," an objection raised for the first time on appeal). "[T]here must be (1) error, (2) that is plain, and (3) that affects substantial rights." *United States v. Pirani*, 406 F.3d 543, 550 (8th Cir. 2005) (en banc) (internal quotation marks omitted). We find no plain error based on the same *Bell* balancing analysis for admission of hearsay.

## B. *Special Condition of No Contact*

McGee also "now objects for the first time on appeal that the district court committed plain error in imposing the no[-]contact order." Appellant's Br. at 24.

District courts must assess the appropriateness of special conditions of supervised release on a case-by-case basis. *See United States v. Morais*, 670 F.3d 889, 895 (8th Cir. 2012). We will uphold such conditions when they "are reasonably related to the [18 U.S.C. § 3553(a)] factors" and "involve no greater deprivation of liberty than is reasonably necessary" while conforming to the Sentencing Commission's policies. *Id*.

McGee argues that his special condition of no contact infringes upon "[his] right to maintain familia[l] relationships and raise his own children." Appellant's Br. at 25 (citing *Troxel v. Granville*, 530 U.S. 57 (2000)). *Troxel* is factually inapposite because the Court affirmed the parents' right to disallow the children's grandparents from visiting them. *See* 530 U.S. at 72–73. The district court here did not plainly err in imposing the special condition of no contact because there is no established right to maintain contact with the mother or father of an individual's child in a case involving domestic violence against the other parent. McGee's citation to *United States v. Hobbs*, 845 F.3d 365 (8th Cir. 2016)—which involved a special condition of no contact between spouses—is also unhelpful because McGee and Millsap are not married.

McGee also argues, "The district court ruled the parties are not to have any contact with one another without an analysis to determine whether it is reasonably related to a sentencing goal or whether it is greater than necessary in achieving a sentencing goal." Appellant's Br. at 26–27. We reject that argument because the court here engaged in a detailed individualized inquiry:

> In this instance, we have repeated conduct that is in disregard to state court orders . . . .
>
> The [g]overnment established . . . [McGee's] assaultive conduct towards . . . Millsap and then his return to the scene and damage to her property . . . .

Those are both in and of themselves incredibly serious violations, and they demonstrate a dangerousness to the community and to [Millsap] specifically that the [c]ourt must consider and does.

Then the following behavior once [McGee] was in custody, the fact that we have 147 phone calls with an individual that [McGee] has a no-contact order with, the use of multiple phone numbers to engage in that conduct, evincing an attempt to evade detection by the officials at the . . . [j]ail, brazen disregard for the no-contact order, and importantly, attempts to influence a witness both in getting the no-contact order lifted . . . but also in attempting to influence and in this case successfully influencing the witness not to comply with service from the [M]arshals service and not to appear here and provide evidence of the assault against her.

Those are all aggravating factors that raise significant concerns in regards to deterren[ce]. Obviously [McGee] has not been deterred from contacting [Millsap] because he's continued to contact her.

Additionally, . . . the [c]ourt has to be concerned about protecting the public. This type of behavior is a danger to the community and to [Millsap] specifically.

R. Doc. 478, at 56–58. "We are satisfied by this explanation that the court conducted an individualized inquiry, and the basis for [the] special condition . . . is evident from the record in any event." *Morais*, 670 F.3d at 895–96.

McGee lastly argues that "[m]ore narrowly tailored alternatives [to the special condition] may include prior approval from a probation officer to have contact, supervised contact[,] or some other form of limited contact," and that "[n]othing in the record indicates these alternatives were considered." Appellant's Br. at 27. But a district court does not plainly err by refusing alternative conditions that would place McGee at risk of violating a state no-contact order. We hold that the district court did not plainly err by imposing the special condition of no contact.

### III. *Conclusion*

Accordingly, we affirm the district court's judgment.

—————————————————————